679 So.2d 1289 (1996)
Leon PAULK and Mary Paulk, as Personal Representatives of the Estate of Jeffrey Scott Paulk, Appellants,
v.
NATIONAL MEDICAL ENTERPRISES INC.; NME Psychiatric Hospitals, Inc.; Psychiatric Institutes of America Inc.; and Lake Hospital, Inc., Appellees.
No. 94-3363.
District Court of Appeal of Florida, Fourth District.
September 25, 1996.
Searcy Denney Scarola Barnhart & Shipley, P.A., and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellants.
Susan M. Seigle, West Palm Beach, for appellees.
FARMER, Judge.
Plaintiffs sued several hospitals for damages on the theory that the hospitals had operated their hospitals as a criminal enterprise. They alleged that the defendants defrauded their patients by extending their hospitalization, without medical necessity, so that they could exhaust available insurance coverage. As part of their alleged scheme, they assigned patients release dates based on the extent of insurance coverage available, rather than on the medical condition of their patients. The trial court concluded that the presuit notice provisions of chapter 766 applied and dismissed the action. We affirm.
Presuit notices of intent to sue are required by section 766.106, Florida Statutes (1995). Section 766.106(2) states in part that:
"After completion of presuit investigations pursuant to s. 766.203 and prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant and... the Department of Business and Professional Regulation by certified mail, return receipt requested, of intent to initiate litigation for medical malpractice." [e.s.]
The term "claim for medical malpractice" is defined to mean "a claim arising out of the *1290 rendering of, or the failure to render, medical care or services."[1] We have no difficulty in deciding that fraudulent rendering of unnecessary medical care and services is encompassed by the term "arising out of the rendering of ... medical care or services."
Presuit investigation is covered by section 766.203, Florida Statutes (1995). Section 766.203(1) provides that "presuit investigation of medical negligence claims and defenses... shall apply to all medical negligence... claims and defenses." [e.s.] The term "medical negligence" is defined in section 766.202(6) to mean "medical malpractice, whether grounded in tort or in contract." The standard for recovery under medical negligence is addressed in section 766.102(1), which embraces:
"any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider." [e.s.]
Under section 766.202(6), we don't think it much matters whether the plaintiffs' claim is framed as an intentional tort or instead as negligence. The legislature was aware of the historical development of the tort. One early theoretical underpinning of claims for medical malpractice was the intentional torts of assault and batterythe departure from the standard of care constituted an unconsented touching of the patient's body. See, e.g., Pratt v. Davis, 224 Ill. 300, 79 N.E. 562 (1906) (damages for surgery to remove patient's ovaries without her consent affirmed on theory of trespass[2] to patient's body); Birnbaum v. Siegler, 273 A.D. 817, 76 N.Y.S.2d 173 (1948) (consent to surgery obtained by fraud invalid; surgery so performed constitutes assault on patient).
But the legislature has used different locutions in prescribing the applicability of these statutes.[3] Unlike section 766.106, which applies to all claims arising out of the rendering of medical care or services, section 766.203 applies to actions for damages based on death or personal injury resulting from medical negligence. Yet, obviously, the current action has nothing to do with death or personal injury. Rather plaintiffs simply allege that medical services were rendered as part of a scheme to collect more than the medical condition required. A literal reading of the statutory text seems to suggest that section 766.106 requires presuit notice but that section 766.203 does not apply to require presuit screening.
Because this is manifestly absurd given the internal structure and logic of the medical malpractice law, we conclude that both statutes must apply. Moreover, section 766.106(2) rather clearly states that the notice shall be given "[a]fter completion of presuit investigation pursuant to s. 766.203." It is clear to us that plaintiffs cannot prove their cause of action without adducing evidence as to the medical necessity for the hospitalization periods. Although we would be more comfortable with the result if the legislature had used consistent qualifying terms in the two statutes, we nevertheless construe the entire statutory scheme in chapter 766 to apply to the kind of claim sought to be maintained in this case.
We also emphasize that plaintiffs' claims are not based on the intentional provision of treatment for a fabricated or nonexistent medical condition, with the fraudulent purpose of receiving insurance payments. Plaintiffs concede that some treatment was necessary but argue that defendants provided treatment different than that indicated by the condition presented.
Plaintiffs' argument on appeal that the claims are not predicated on a breach of the professional standards of care appropriate for the patient's condition is belied by the allegations of their own complaint. Among others, plaintiffs allege that decedent "was in *1291 need of psychiatric treatment"; that the providers in this case "failed to provide [decedent] with any meaningful treatment"; and that the treatment provided was "without proper regard for [decedent's] medical needs." In light of these allegations, the conclusion that the cause of action sounds in medical malpractice is inescapable.
AFFIRMED.
STEVENSON, J., concurs.
STONE, J., dissents with opinion.
STONE, Judge, dissenting.
I would reverse. In my judgment the notice and screening provisions in question do not apply to Appellants' claims for civil damages for alleged fraud and operation of a criminal enterprise. The trial court should not have applied the medical malpractice statute to dismiss the complaint and enter a judgment on the pleadings in favor of Appellees.
Appellants contend that Appellees operated their psychiatric hospitals with the object of defrauding patients by billing them for meaningless extended hospitalization through assigning release dates designed only to coincide with the expiration of insurance benefits. Appellants claim that a consequence of Appellees' fraudulent scheme was to deprive the deceived patient of insurance coverage that would not have been over-extended had release dates been determined on the basis of the patient's condition rather than simply on a business policy of maximizing patient stays to coincide with the extent of coverage regardless of need.
Appellees argue that professional standards of care must be inextricably involved in resolving Appellants' intentional tort claims and that this is in fact a negligence claim disguised under intentional tort counts. However, the issue at this stage of the proceedings should be resolved by considering only the facts and essential elements as pled. The focus of Appellants' claims is not on whether the treatment received was professionally sound, but, rather, that there was an organized scheme to control treatment decisions, routinely and fraudulently, solely by reference to maximizing insurance payments without regard to the patient's condition or need for services.
I note that the issue before us is not whether the complaint states a cause of action for the intentional torts alleged. The issues raised by the relevant portions of the complaint do not involve negligent care and there is no element of the causes of action alleged requiring proof of Appellees' failing to follow a medical standard of treatment. Therefore, no purpose is served by conducting pre-suit investigations and screening procedures. Not every wrongful act by a medical professional constitutes malpractice requiring application of section 766.106, Palm Springs Gen. Hosp., Inc. v. Perez, 661 So.2d 1222 (Fla. 3d DCA 1995), rev. denied, 670 So.2d 939 (Fla. Feb. 23, 1996); J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945 (Fla.1994); Liles v. P.I.A. Medfield, Inc., 681 So.2d 711 (Fla. 2d DCA 1995), or other statutes pertaining to medical malpractice, Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993); Jackson v. Biscayne Medical Ctr., Inc., 347 So.2d 721 (Fla. 3d DCA 1977); St. Vincent's Medical Ctr. v. Oakley, 371 So.2d 590 (Fla. 1st DCA 1979).
In J.B., the Florida Supreme Court answered questions certified to it by the Eleventh Circuit Court of Appeals, to which the plaintiff had appealed the dismissal of his complaint. The plaintiff claimed that he became HIV-positive through the negligence of the defendant hospital, which asked him to transport its patient, his brother, to another facility without alerting him to his brother's AIDS diagnosis or warning him of the risks involved. During the transport the plaintiff came into contact with his brother's blood in attempting to keep a heparin lock from coming out of the brother's arm. The court determined that because the plaintiff's injury did not arise from the defendant's diagnosis, treatment, or care of the plaintiff, the action was not a medical malpractice action.
In Palm Springs, the court denied a petition for certiorari as to the denial of the defendant hospital's motion to dismiss and held the plaintiff had no obligation to comply with the screening provisions in a premises *1292 liability action alleging the hospital was negligent in placing the plaintiff in a room with another patient, who attacked her.
In Jackson, the plaintiff allegedly had been falsely arrested and maliciously prosecuted for trespassing at the defendant hospital, from which he allegedly had been wrongfully removed without medical authorization. The Third District reversed a dismissal of intentional tort counts for false arrest, malicious prosecution, assault and battery, slander, and also for breach of contract, as having no connection with malpractice, even though arising from the same transaction as other, dismissed, negligence counts.
In Oakley, the First District, citing to Jackson, denied a writ of prohibition sought by the hospital to prohibit the circuit court from exercising jurisdiction over a complaint for false imprisonment based on allegations that the plaintiff appeared at the hospital for a voluntary psychiatric examination and was forcibly detained against his will.
Oakley and Jackson were both cited in the more recent case of Stackhouse, in which the plaintiff alleged he voluntarily admitted himself to the hospital for treatment of alcoholism, but the appellees refused to release him as he demanded and forced treatment upon him. He alleged counts for conspiracy, fraud, and theft; false imprisonment; violation of his rights; and intentional infliction of emotional distress. The trial court dismissed the complaint with prejudice as barred by the medical malpractice statute of limitations, but the Fifth District reversed, finding the complaint, on its face, did not contain allegations of medical malpractice, but instead intentional torts.
In Liles, the court reversed the trial court's dismissal of a complaint including a count for false imprisonment, alleging the health care providers' failure to comply with the involuntary commitment provisions of the Baker Act, chapter 394, Florida Statutes (1989). Concluding that as the procedures under the act do not involve the rendering of medical services, the plaintiff was not required to comply with the medical malpractice act's screening requirements.
The purpose of the malpractice reform legislation was "to provide a plan for prompt resolution of medical negligence claims." § 766.201(2), Fla. Stat. (1993) (emphasis added). The Act does not address claims of intentional misconduct. We also note that the pre-suit investigation which is part of that plan, § 766.201(2)(a), is specifically geared to the investigation of medical negligence claims, § 766.203, and that pre-suit discovery provisions apply to cases in which there are grounds for a "claim of negligent injury," § 766.205(1) (emphasis added), as do provisions allowing the court to determine if a claim or denial is reasonable, § 766.206. Further, the standards of recovery are prescribed only for medical negligence, § 766.102, and the provisions for court-ordered arbitration apply only to death or personal injury resulting from the negligence of a health care provider, § 766.107.
Therefore, considering the allegations most favorably to Plaintiffs, it was error to enter a judgment on the pleadings.
NOTES
[1] See § 766.106(1)(a), Fla. Stat. (1995).
[2] In this instance, although the opinion does not explicitly say so, the tort was trespass on the case.
[3] Even though chapter 766 uses the term "negligence" or "medical negligence" in several of its provisions, we do not believe that the legislature intended to limit coverage of the statutory scheme to only those actions framed in terms of negligence. It seems to us that the intent expressed in the text is to extend the statute whenever the medical judgment of the provider is being challenged.