746 So.2d 1105 (1999)
Daniel O'SHEA, and Pamela O'Shea, his wife, Appellants,
v.
Dr. Reginald PHILLIPS, M.D., and Cleveland Clinic Florida, a Florida corporation, Appellees.
No. 98-2647.
District Court of Appeal of Florida, Fourth District.
September 17, 1999.
Opinion Denying Rehearing November 24, 1999.
Beverly A. Pohl, and Bruce S. Rogow of Bruce S. Rogow, P.A., Fort Lauderdale, and Steven D. Miller, Plantation, for appellants.
Paul R. Regensdorf, and Thomas G. Aubin of Akerman, Senterfitt & Eidson, P.A., Fort Lauderdale, for Appellee-Cleveland Clinic Florida, a Florida corporation.
GROSS, J.
The issue in this case is whether Chapter 766, Florida Statutes (1997), presuit requirements apply to a claim that a health care facility negligently supervised or retained an employee who sexually assaulted a patient. We hold that the chapter's presuit requirements do apply, and we affirm the order of dismissal entered by the trial court.
Daniel O'Shea ("O'Shea") filed a second amended complaint against Cleveland Clinic Florida ("Cleveland Clinic" or "clinic") alleging two causes of action: negligent supervision and negligent retention of a neurologist employed at the clinic, Dr. Reginald Phillips. A third count of the complaint was the claim of O'Shea's wife, *1106 Pamela, for loss of consortium. The O'Sheas filed their original complaint against both Phillips and the clinic on September 27, 1996. Two of the causes of action asserted in the original complaint concerned the clinic's negligent supervision and retention of Phillips.
The second amended complaint alleged that on October 29, 1992, Phillips sexually battered O'Shea in a clinic examination room by digital penetration of O'Shea's anus.[1] O'Shea had gone to the clinic for medical treatment. The pleading asserted that before October 29, the clinic knew that Phillips had sexually battered Grant Waag, another clinic patient, in a similar fashion. The Waag incident occurred in August, 1992, and was reported immediately to the clinic's chief of staff.
On June 30, 1998, the trial court granted the clinic's motion to dismiss on alternative groundsthat before filing suit, the O'Sheas had not complied with the presuit requirements of Chapter 766, Florida Statutes (1997), and that the claims were barred by the two year statute of limitations on medical malpractice claims contained in section 95.11(4)(b), Florida Statutes (1997).
Chapter 766, Florida Statutes (1997) "sets out a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court." Kukral v. Mekras, 679 So.2d 278, 280 (Fla.1996). In identifying those actions to which the required presuit notice and procedures apply, section 766.106(1)(a) defines a "[c]laim for medical malpractice" as a "claim arising out of the rendering of, or the failure to render, medical care or services." Sections 766.201-766.212, Florida Statutes (1997), concern presuit investigation and arbitration of "medical negligence claims." Section 766.202(6) defines "[m]edical negligence" as "medical malpractice, whether grounded in tort or in contract." Reading these sections together, the supreme court has held that "chapter 766's notice and presuit screening requirements apply to claims that `aris[e] out of the rendering of, or the failure to render, medical care or services.'" J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 949 (Fla.1994).
Section 766.102(1), Florida Statutes (1997), establishes the standard of liability for a health care provider in a negligence action:
The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
Chapter 766 imposes an additional duty on health care facilities, which is to assure the competence of medical staff and personnel through careful selection and review. A patient may sue for the failure to exercise due care in fulfilling this duty, when such failure is the legal cause of injury to a patient. Section 766.110, Florida Statutes (1997), provides:
(1) All health care facilities, including hospitals and ambulatory surgical centers, as defined in chapter 395, have a duty to assure comprehensive risk management and the competence of their medical staff and personnel through careful selection and review, and are liable for a failure to exercise due care in fulfilling these duties. These duties shall include, but not be limited to:
(a) The adoption of written procedures for the selection of staff members and a periodic review of the medical care and treatment rendered to patients by each member of the medical staff;
(b) The adoption of a comprehensive risk management program which fully *1107 complies with the substantive requirements of s. 395.0197 as appropriate to such hospital's size, location, scope of services, physical configuration, and similar relevant factors;
(c) The initiation and diligent administration of the medical review and risk management processes established in paragraphs (a) and (b) including the supervision of the medical staff and hospital personnel to the extent necessary to ensure that such medical review and risk management processes are being diligently carried out.
Each such facility shall be liable for a failure to exercise due care in fulfilling one or more of these duties when such failure is a proximate cause of injury to a patient.
(Italics supplied).
Section 766.110(1)(b) requires a health care facility to adopt a comprehensive risk management program which fully complies with the substantive requirements of section 395.0197, Florida Statutes (Supp. 1998). That section specifies the mandatory components of an internal risk management program. One of these components concerns acts of sexual abuse or misconduct perpetrated by an employee of a health care facility:
(9) The internal risk manager of each licensed facility shall:
(a) Investigate every allegation of sexual misconduct which is made against a member of the facility's personnel who has direct patient contact, when the allegation is that the sexual misconduct occurred at the facility or on the grounds of the facility; and
(b) Report every allegation of sexual misconduct to the administrator of the licensed facility.
(c) Notify the family or guardian of the victim, if a minor, that an allegation of sexual misconduct has been made and that an investigation is being conducted;
(10) Any witness who witnessed or who possesses actual knowledge of the act that is the basis of an allegation of sexual abuse shall:
(a) Notify the local police; and
(b) Notify the hospital risk manager and the administrator.
For purposes of this subsection, "sexual abuse" means acts of a sexual nature committed for the sexual gratification of anyone upon, or in the presence of, a vulnerable adult, without the vulnerable adult's informed consent, or a minor. "Sexual abuse" includes, but is not limited to, the acts defined in s. 794.011(1)(h), fondling, exposure of a vulnerable adult's or minor's sexual organs, or the use of the vulnerable adult or minor to solicit for or engage in prostitution or sexual performance. "Sexual abuse" does not include any act intended for a valid medical purpose or any act which may reasonably be construed to be a normal caregiving action.
(11) A person who, with malice or with intent to discredit or harm a licensed facility or any person, makes a false allegation of sexual misconduct against a member of a licensed facility's personnel is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
§ 395.0197, Fla. Stat. (Supp.1998).[2]
Chapter 766 thus expressly addresses the responsibility of a health care facility for acts of sexual abuse committed by employees on its grounds. The statute imposes liability for the facility's failure to exercise due care in the implementation of that portion of the risk management program directed at the sexual abuse perpetrated *1108 by employees. The duty to screen and monitor staff to prevent sexual misconduct is owed to the patients of a health care facility, in addition to the standard of care imposed by section 766 .102(1). See Doe v. Young, 656 So.2d 569, 571 (Fla. 5th DCA 1995) (Cobb, J., concurring).
In Weinstock v. Groth, 629 So.2d 835, 838 (Fla.1993), the supreme court held that the proper test for determining whether a health care provider "is entitled to notice under section 766.106(2) is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1)." Similarly, we hold that the presuit requirements of Chapter 766 are also mandatory where a claimant's cause of action is based on a health care facility's failure to exercise due care in fulfilling the duties imposed by section 766.110; the claim that a facility has improperly supervised or retained an employee who has committed sexual abuse on a patient arises "out of the rendering of ... medical care or services." Sacred Heart Hosp. of Pensacola, 635 So.2d at 949. A cause of action arising under section 766.110 is a type of "medical malpractice" or "medical negligence" to which the Chapter 766 presuit requirements apply.
We distinguish the cases relied upon by the O'Sheas, which hold that not every wrongful act by a health care provider amounts to medical malpractice subject to Chapter 766 notice and screening requirements. See Liles v. P.I.A. Medfield, Inc., 681 So.2d 711, 712 (Fla. 2d DCA 1995); Broadway v. Bay Hosp., Inc., 638 So.2d 176, 177 (Fla. 1st DCA 1994). Where the nub of the plaintiff's claim is a theory of negligence apart from medical malpractice, there is no obligation to comply with Chapter 766 notice and screening requirements. See Feifer v. Galen of Florida, Inc., 685 So.2d 882 (Fla. 2d DCA 1996); Hicks v. Baptist Hosp., Inc., 676 So.2d 1019 (Fla. 1st DCA 1996); Palm Springs General Hosp., Inc. v. Perez, 661 So.2d 1222 (Fla. 3d DCA 1995); Broadway, 638 So.2d at 177.
In Perez, a patient sued a hospital for placing her in a room with another patient who committed a homosexual attack on her. The trial court denied the hospital's motion to dismiss for failure to comply with the screening requirements of Chapter 766. The third district held that Chapter 766 did not apply and denied certiorari, ruling that the action sounded "in common law negligence, not medical malpractice, as it is, in effect, a premises liability case arising out of a criminal attack by a third party." 661 So.2d at 1223. Perez is consistent with other cases holding Chapter 766 to be inapplicable to negligence theories other than medical malpractice. See Broadway, 638 So.2d at 177 (involving failure to warn of a dangerous condition or properly maintain a piece of equipment); Hicks, 676 So.2d at 1019 (deciding premises liability); Feifer, 685 So.2d at 885 (involving premises liability).
The distinction between Perez and this case is that this case involves the sexual misconduct of an employee. The health care facility's liability for the misconduct of the employee is addressed by section 766.110. Therefore, liability is not based on a theory of negligence apart from medical malpractice, but on a type of medical malpractice described by Chapter 766.
Paulk v. National Medical Enterprises, Inc., 679 So.2d 1289 (Fla. 4th DCA 1996), concerned a claim that hospitals had engaged in a fraudulent criminal enterprise by extending patients' hospitalization without medical necessity. This court upheld the trial court's dismissal of the claim for failure to comply with Chapter 766 presuit notice provisions. We held that the "fraudulent rendering of unnecessary medical care ... is encompassed by the term `arising out of the rendering of ... medical care or services'" within the meaning of section 766.106(1)(a). 679 So.2d at 1290. Crucial to this court's decision was that the existence of any fraud was intertwined with the legitimate delivery of medical services. The plaintiffs in Paulk conceded "that some treatment was necessary but argue[d] that [the] defendants provided *1109 treatment different than that indicated by the condition presented." Id. Similarly, the ongoing duty to review and evaluate medical staff at issue in this case is part of the delivery of medical services to the public. Although not directly applicable, Paulk supports the result we reach here.
Because we decide this case based on the application of Chapter 766, we do not reach the question of whether the dismissal was also appropriate under Chapter 95.
AFFIRMED.
GUNTHER and FARMER, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
We deny appellants' motion for rehearing. The panel decision does not involve a retroactive application of a cause of action created by statute. We agree with appellee that before the passage of the 1995 amendments to Chapter 395, Chapter 766 presuit requirements applied to the cause of action in this case. Chapter 766 applies to claims arising out of the rendering of medical care or services. The negligent failure of the clinic to properly supervise its physician employee and its negligent retention of him arose out of the rendering of medical care or services. See Paulk v. National Med. Enters., Inc., 679 So.2d 1289 (Fla. 4th DCA 1996); Doe v. Young, 656 So.2d 569, 571 (Fla. 5th DCA 1995) (Cobb, J., concurring); Doe v. HCA Health Servs. of Florida, Inc., 640 So.2d 1177 (Fla. 2d DCA 1994); Martinez v. Lifemark Hosp. of Florida, Inc., 608 So.2d 855 (Fla. 3d DCA 1992). In deciding the central issue of this casei.e., whether a claim of sexual misconduct by a health care provider is included within the provisions of Chapter 766we are not acting as common law judges. Instead, we are merely reading a statute and attempting to ascertain what it means. The terms of this particular statute do not plainly give judges a common law power to fill in gaps by deciding what kinds of claims are subject to its provisions. See Frank Easterbrook, Statutes' Domains, 50 U. CHI. L. REV. 533, 544-52 (1983). The statute itself sets out to specify what claims are covered by it, and we believe that a claim of sexual misconduct by a doctor during a medical examination or procedure is a "claim arising out of the rendering of ... medical care or services." § 766.106(1)(a), Fla. Stat. (1993). This particular claim of sexual misconduct was covered by the presuit screening and other provisions of Chapter 766 because that is what the statute says and means.
The obligations of the risk management programs described in Chapters 766 and 395 reinforce this application of the statute. We believe that the conduct at issue in this case fell within the definition of an "[a]dverse or untoward incident" under section 395.002(2)(c), Florida Statutes (1993). The 1995 amendments clarified and expanded the reach of the statute; as appellee argues in its reply to appellants' motion for rehearing, they "did not create some new cause of action or venture into areas unheard of in 1992." See, e.g., Lowry v. Parole & Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985).
GUNTHER, FARMER, and GROSS, JJ., concur.
NOTES
[1] Phillips was prosecuted and convicted of sexual battery of O'Shea. His conviction was affirmed by this court. Phillips v. State, 730 So.2d 694 (Fla. 4th DCA 1999).
[2] These subsections were added to Section 395.0197, Florida Statutes (1995), by Chapter 95-319, section 1, Laws of Florida. At that time, they were numbered as subsections (7), (8), and (9). See Ch. 95-319 § 1, at 2859-60, Laws of Fla. Prior to the amendments, the sexual misconduct of a health care facility's personnel would have fallen under the general category of "adverse or untoward incidents" to which risk management programs were directed. See §§ 395.0197(1)(a), (5)(c), Fla. Stat. (1993).