HAZOURI, J.
On September 18, 2000, Gladys Solomon and her husband, Alvin Solomon, (collectively, “the Solomons”) filed suit against Well Care HMO, Inc. (‘Well Care”), a health maintenance organization (“HMO”), for withholding or denying authorization of Gladys Solomon’s claim for coverage under a health benefit contract. The trial court granted Well Care’s Motion to Dismiss the Third Amended Complaint and dismissed the complaint with prejudice. We reverse.
The Third Anended Complaint generally alleges: Gladys Solomon obtained an Individual Health Benefit Contract from Well Care (“the Well Care contract”). Thereafter, her treating physician discovered uterine fibroids and recommended a total abdominal hysterectomy. “On June 11, 2000, Well Care provided authorization for the surgei-y for medical necessity only under authorization # 100049321 but did not guarantee payment of the claim, pending Well Care’s investigation of a potential pre-existing condition.” Well Care performed its investigation, determined that the pre-existing condition exclusion did not apply and guaranteed payment. Gladys Solomon underwent preoperative preparation for the surgery. On June 19, 1998, the day before the scheduled surgery, Well Care informed Gladys Solomon that it would not guarantee payment for the surgery. As a result, she did not undergo surgery. The Well Care contract provides a coverage exclusion for pre-existing conditions.
The complaint asserts causes of action for breach of contract (count I), fraud in the inducement (count II), fraud (count III), intentional infliction of emotional dis: tress (count IV), breach of implied covenant of good faith and fair dealing (count V), and loss of consortium (count VI). The breach of contract cause of action alleges, Well Care materially breached its promises and obligations under the plan by failing to authorize payment of benefits for a medically necessary surgery.”
Well Care moved to dismiss the Third Amended Complaint, arguing the six causes of action are claims for medical malpractice as defined in section 766.106(l)(a), Florida Statutes (2000), as they are predicated on and arise out of the alleged denial of medically necessary care and treatment, and the Solomons failed to serve presuit notice as required under sec *545 tion 766.106(2). Well Care further argued the dismissal should be with prejudice as the two-year statute of limitations for the claims expired on June 19, 2000, and they had not been served with presuit notice.
The Solomons argued that the ease involved Well Care’s failure to authorize payment of a claim and had nothing to do with whether the procedure was medically necessary. The Solomons asserted that Well Care did not deny coverage because the surgery was not medically necessary but rather because Well Care concluded that it was treatment for a pre-existing condition.
The trial court found that the complaint was based on Well Care’s alleged withdrawal of its authorization for a medically necessary operation, requiring the Solo-mons to serve Well Care with presuit notice under chapter 766, Florida Statutes (2000). The trial court further found that because the two-year statute of limitations on medical malpractice claims expired, the Solomons could not cure the deficiency.
A complaint asserting claims for medical malpractice that is filed before presuit notice requirements are met is subject to dismissal with' leave to amend, so long as the two-year statute of limitation period has not yet run; however, the cure is not available if the statutory period for initiating suit has run before the plaintiff attempts to fulfill presuit notice: requirements. See S. Neurosurgical Assocs., P.A. v. Fine, 591 So.2d 252, 255 (Fla. 4th DCA 1991). The parties do not dispute that if the claims are for medical malpractice, then the statutory period has run and the dismissal would be appropriate.
The Solomons contend the claims in the Third Amended Complaint are not for medical malpractice or medical negligence, as they do not challenge the professional judgment or skill of Well Care in providing medical care and treatment. They argue the trial court erred when it determined that the claims are subject to compliance with the presuit notice requirement set forth in chapter 766, and dismissed the complaint on that basis.
Section 766.106 requires plaintiffs to notify health care providers of their intent to initiate medical malpractice litigation. See, e.g., J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 948-49 (Fla.1994); Patry v. Capps, 633 So.2d 9 (Fla.1994); Weinstock v. Groth, 629 So.2d 835 (Fla.1993); Paulk v. Nat’l Med. Enters. Inc., 679 So.2d 1289 (Fla. 4th DCA 1996). Section 766.106(2), provides:
After completion of presuit investigation pursuant to s. 766.203 and prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical malpractice.
A “claim for medical malpractice” is defined as “a claim arising out of the rendering of, or the failure to render, medical care or services.” § 766.106(l)(a), Fla. Stat. (2000). Presuit investigation under section 766.203, applies to “medical negligence” claims. See § 766.203(1), Fla. Stat. (2000) (“Presuit investigation of medical negligence claims and defenses ... shall apply to all medical negligence ... claims and defenses.”). “Medical negligence” is defined as “medical malpractice, whether grounded in tort or in contract.” See § 766.202(6), Fla. Stat. (2000).
A complaint does not state a medical malpractice claim for chapter 766 purposes, where the complaint does not allege that the defendant was negligent in the rendering, or the failure to render, medical care or services. See J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 948-49 (Fla.1994). See also Silva v. Southwest *546 Fla. Blood Bank, Inc., 601 So.2d 1184, 1187 (Fla.1992) (“In ordinary, common parlance, the average person would understand ‘diagnosis, treatment, or care’ to mean ascertaining a patient’s medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient’s daily needs during the illness.”).
The Solomons rely upon this court’s decision in Lane v. Health Options, Inc., 796 So.2d 1234 (Fla. 4th DCA 2001), when arguing their claims are not for medical malpractice. In Lane, the appellant filed suit against an HMO claiming negligence, breach of contract, bad faith, common law bad faith and deceptive and unfair trade practices for damages resulting from the HMO’s decision to decline authorization for a medical procedure. The complaint alleged:
Defendant [HMO] was negligent in that defendant made a negligent medical decision in contradiction to the treating doctor whom [sic] advised that a muscle flap was needed to cover the wound to prevent a bone infection. The Defendant in opposition to said medical advise [sic] made a medical decision to have a skin graft performed instead of the muscle flap. The skin'graft did not take and the skin receded from the bone leaving an open bone. The bone became infected and Plaintiff required numerous subsequent operations to correct the problem.
Id. at 1235. The HMO moved to dismiss the complaint, arguing that it was a health care provider and appellant failed to serve it with presuit notice within the two-year statute of limitations applicable to medical malpractice actions. The trial court agreed and dismissed the complaint with prejudice. Id. at 1236. This court determined:
There are no allegations in this complaint from which it could be determined as a matter of law, as the trial court did, that the HMO was “rendering” medical care or services. The allegation in the complaint that the decision by the HMO was a “negligent medical decision” was merely conclusory. The dismissal on the ground that this is a medical malpractice case, based solely on the allegations of the complaint, was accordingly error.

Id.

As the Solomons argue, pursuant to this court’s decision in Lane, there are no allegations in the Third Amended Complaint from which it could be determined as a matter of law, as the trial court did, that Well Care was “rendering” medical care or services, as required to invoke application of chapter 766. The trial court focused on the reference to “medical necessity” and “medically necessary” in the following allegations:
8. On June 11, 2000, Well Care provided authorization for the surgery for medical necessity only under authorization # 100049321 but did not guarantee payment of the claim, pending Well Care’s investigation of a potential preexisting condition.
[[Image here]]
16. Well Care materially breached its promises and obligations under the plan by failing to authorize payment of benefits for a medically necessary surgery.
These allegations and the claim for breach of contract as a whole are based on Well Care’s decision to withdraw authorization for a procedure that it determined was pre-existing and, therefore, not covered by the Well Care contract. The conclusory allegation that the procedure was medically necessary is not an allegation that Well Care rendered medical care to Solomon. *547 Further, the claim calls for a determination as to whether the condition was preexisting as contemplated by the parties’ contract which does not require a determination as to whether the procedure vyas necessary.
Additionally, the claims for fraud in the inducement (count II), fraud (count III), intentional infliction of emotional distress (count IV) and breach of implied covenant of good faith (count V) deal with Well Care’s alleged misrepresentations prior to the parties entering into the Well Care contract and with whether Well Care’s decision to deny authorization was malicious — not with the rendering of medical care. Thus, the trial court erred when it determined that all the claims were for medical malpractice.
Well Care’s reliance upon this court’s decision in Paulk v. National Medical Enterprises. Inc., 679 So.2d 1289 (Fla. 4th DCA 1996), when arguing that the claims are for medical malpractice, is misplaced. In Paulk, the plaintiffs sued several hospitals for damages on the theory that the hospitals had defrauded their patients by extending their hospitalization without medical necessity so that they could exhaust available insurance coverage. The complaint alleged that the decedent “was in need of psychiatric treatment”; that the providers “failed to provide [decedent] with any meaningful treatment”; and that the treatment provided was “without proper regard for [decedent’s] medical needs.” Id. at 1290-91 (emphasis added). The trial court concluded that the presuit notice provisions of chapter 766 applied and dismissed the complaint. Id. at 1289. This court noted that under section 766.202(6), it does not matter whether the plaintiffs’ claim is framed as an intentional tort or as negligence. Id. at 1290. This court also emphasized that the plaintiffs’ claims were not based on the intentional provision of treatment for a fabricated or nonexistent medical condition with the fraudulent pur^ pose of receiving insurance payments. Id. This court concluded that fraudulent rendering of unnecessary medical care and services is encompassed by the term “arising out of the rendering of ... medical care or services,” and “the conclusion that the cause of action sounds in medical malpractice is inescapable.” Id.
This case is distinguishable from Paulk. In Paulk, the complaint clearly alleged that the defendant hospital was rendering medical care as there were allegations that it provided unnecessary treatment. This court focused on the allegations that the hospital provided treatment not on whether the claims asserted would require a determination as to whether that treatment was medically necessary. In this case, there are no allegations that Well Care rendered medical care or was in a position to render medical care and failed to do so. The allegations here deal with the alleged misrepresentations Well Care made to induce Solomon to enter into the contract for health care coverage and with its decision to withdraw authorization because the recommended treatment was not covered by the Well Care contract.
There are no allegations in the Third Amended Complaint from which it could be determined as a matter of law, as the trial court did, that Well Care was “rendering” medical care or services as required to invoke the application of chapter 766. Thus, the trial court erred when it determined that the claims dealt with medical malpractice and dismissed the complaint on the basis that the Solomons failed to comply with the presuit notice requirement under section 766.106(2). The order dismissing the complaint is reversed and the case is remanded for further proceedings. We express no opinion as to whether any of the counts in the Third Amended *548 Complaint state a cause of action and express no .opinion on the merits of any of the claims.
REVERSED.
WARNER and MAY, JJ., concur.