PER CURIAM.
Palms West Hospital (Palms West) petitions this court for a writ of certiorari following the circuit court’s denial of its motion to dismiss respondent Charles H. Burns’ third amended complaint for failure to follow pre-suit procedures under the Florida Medical Malpractice Act. See § 766.102, Fla. Stat. (2009). We find that *787 this was a departure from the essential requirements of the law and grant the petition.
Respondent/plaintiff Burns is the personal representative of the estate of Enrique Casasnovas. In 2006, Casasnovas was taken to the Palms West emergency room with complaints of abdominal pain, nausea and vomiting blood. Upon examination, he was found to have elevated blood sugar and in diabetic ketoacidosis. It was determined that Casasnovas was suffering from an emergency medical condition and that he was in need of a gas-troenterologist; however, none were available on the premises. Every off-site doctor that Palms West contacted refused to come to the hospital to treat Casasno-vas. The respondent alleges that this is because he did not have insurance. Ca-sasnovas was transferred to North Bro-ward Medical Center where he subsequently died.
Casasnovas’ estate filed suit against Palms West alleging inter alia that the hospital negligently retained physicians who it knew would not treat patients without insurance. The respondent claimed that the hospital was aware its doctors would not show up to treat uninsured patients, as a similar incident happened one month prior to Casasnovas’ death.
The respondent alleged that Palms West had a non-delegable duty to provide emergency room services and care to any persons presenting themselves requesting such care. They maintained that Palms West had an agreement with one or more physicians in the field of gastroenterology; they alleged that the doctors, directly or indirectly, had an agreement and/or contract with Palms West to provide emergency room services and care and therefore had a duty to do so. The complaint alleged that Palms West was responsible for ensuring that a physician in the gas-troenterology field was available to treat Casasnovas. It further alleged that because of the slow treatment of Casasnovas, he died. Prior to this, Palms West allegedly knew that these doctors might refuse to treat patients as they did not believe they were provided sufficient compensation or medical malpractice insurance by Palms West. The complaint went on to allege that Palms West refused to terminate its relationship with these doctors and that it was vicariously liable for the doctors’ acts or omissions.
Palms West sought to dismiss the claims for failure to follow the pre-suit screening procedures. It asserted that the claims arose from the rendering of, or the failure to render, medical services and the suit was therefore a medical negligence action subject to dismissal for failure to follow pre-suit procedures. It further argued that with regard to a statutory cause of action based upon section 766.110, Florida Statutes (2009) (duty to assure competence of medical staff members), this theory is predicated upon the provision of non-negligent care to patients and implicates the pre-suit requirements. The court dismissed the bulk of respondent’s claims; however, it found that the two claims alleging negligent retention of physicians and the hospital’s duty to assure competent staff members were not medical negligence claims. It is from this order which Palms West seeks certiorari review.
In order to receive certiorari relief, a petitioner must show that the circuit court departed from the essential elements of law and the order will cause irreparable injury not remedial on direct appeal. Bared & Co., Inc. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996). It is well-settled that “[ejertiorari is appropriate to review an order denying a motion to dismiss which claims the pre-suit requirements of Chapter 766 have not been met.” *788 Cent. Fla. Reg’l Hosp. v. Hill, 721 So.2d 404, 405 (Fla. 5th DCA 1998).
Irreparable harm can be shown where a court incorrectly denies a motion to dismiss for failure to follow pre-suit requirements, as doing so would eliminate the cost-saving features the Act was intended to create. Dr. Navarro’s Vein Ctr. of the Palm Beach, Inc. v. Miller, 22 So.3d 776, 778-79 (Fla. 4th DCA 2009). The Florida Supreme Court has made it clear that the pre-suit screening procedures should be read in a way which favors access to the courts. Integrated Health Care Servs., Inc. v. Lang-Redway, 840 So.2d 974, 980 (Fla.2002).
The petitioner now asserts that Ca-sasnovas’ two remaining claims arise out of the rendering of, or failure to render, medical services. After careful consideration, we find that these claims do arise under the Florida Medical Malpractice Act and that the trial court departed from the essential requirements of law when it did not dismiss the claims for failure of respondent to follow pre-suit procedures.
A “‘[c]laim for medical negligence’ or ‘claim for medical malpractice’ means a claim, arising out of the rendering of, or the failure to render, medical care or services.” See § 766.106(1)(a), Fla. Stat. (2009); see also J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945, 948-49 (Fla.1994).
This court accepts as true all of the factual assertions made in the complaint, see, e.g., Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999), and finds that the hospital’s negligent retention of doctors who failed to treat Casasnovas, ultimately causing his death, is a claim arising under the Medical Malpractice Act.
Of particular import is that Casas-novas was treated by Palms West. It was during his initial treatment that hospital personnel determined that a GI doctor was required. The failure of the on-call doctors to respond, which respondent alleges resulted in Casasnovas’ death, sounds in medical negligence, even if the doctors’ motives were purely economic. Palms West’s retention of these doctors, who the hospital knew were making financial decisions to refuse to treat patients lacking insurance, is a medical negligence claim where the respondent is claiming that Ca-sasnovas’ death resulted from the lack of treatment. While we acknowledge that “[n]ot every wrongful act by a medical provider is medical malpractice,” see, e.g., Quintanilla v. Coral Gables Hosp., Inc., 941 So.2d 468, 469 (Fla. 3d DCA 2006), we hold that Palms West’s alleged negligent retention of doctors who failed to treat patients and the hospital’s continued staffing of these doctors are claims arising under the Medical Malpractice Act and implicate pre-suit requirements.
This court issued Indian River Memorial Hospital, Inc. v. Browne, 44 So.3d 237, 239 (Fla. 4th DCA 2010), and reversed a trial court order which determined pre-suit provisions did not apply. In that case, a patient was admitted to the emergency room in a disoriented state. He fell off of a stretcher and suffered head injuries, which caused his death. His estate alleged the hospital improperly supervised him by leaving his bed’s guardrail insecure. Id. at 238. We found that complaint alleged a medical negligence claim. Id. “The standard of care for the hospital’s treatment of Browne is based in part on the hospital’s evaluation of his medical condition when he was admitted to the emergency room.” Id. at 238-39. Further, since another aspect of the claim was the hospital’s failure to implement adequate procedures to protect ER patients from falling from hospital beds, the adequacy of *789 the procedures “depends on the prevailing professional standard for managing and supervising those admitted to hospital rooms. These types of issues arise out of the rendering of, or the failure to render, medical care or services.” Id. at 239. Similar to Indian River, we hold that the standard of care for the hospital’s treatment, or lack of treatment, toward Casas-novas would be based, in part, on Palms West’s evaluation of his condition when he was admitted to the emergency room. “The duty of the hospital to select and review health care personnel arises under the medical malpractice statute. Furthermore, the negligent medical treatment ‘is both necessary to the claims against the [hospital] and inextricably connected to them.’ ” St. Anthony’s Hosp., Inc. v. Lewis, 652 So.2d 386, 387 (Fla. 2d DCA 1995) citing Martinez v. Lifemark Hosp. of Fla., Inc., 608 So.2d 855, 857 (Fla. 3d DCA 1992)).
The respondent asks that we consider Joseph v. University Behavioral LLC., 71 So.3d 913 (Fla. 5th DCA 2011), in support of the idea that not every wrongful act involved in a medical setting necessarily implicates medical negligence. In that case the plaintiff was injured following a physical altercation with a fellow patient at a psychiatric facility. He had previously asked the facility to separate him from the other patient, complaining he was being bullied, yet no action was taken. Joseph filed suit against the facility, asserting negligence. The circuit court dismissed the claim, finding that it alleged medical negligence, and was not brought within the two-year timeframe required under the statute. The Fifth District disagreed because it determined that a decision by the facility to not separate two patients involved no medical assessment.
We find Joseph distinguishable. In order for Casasnovas to show that he died as a result of the Palms West doctors failing to treat him, as alleged in the complaint, he would have to prove that the treatment was medically necessary, unlike the plaintiff in Joseph.
In South Miami Hospital, Inc. v. Perez, 38 So.3d 809 (Fla. 3d DCA 2010), the Third District found that a patient who fell off of a bed, while left unsupervised and unrestrained, suffering injuries, brought a medical malpractice action even though the complaint characterized the patient as a “business invitee.” The court concluded that the claims could be “proven only through evidence that the alleged negligent action or inaction of a health care provider ... fell below the prevailing standard of care in the community for that health care provider resulting in injury.” Id. at 812 (discussing Tenet S. Fla. Health Sys. v. Jackson, 991 So.2d 396, 399 (Fla. 3d DCA 2008)). Similarly, whether Palms West is liable for failing to render medical care rests, in part, on how the claim is to be proved. The doctors’ alleged conspiracy to not consult with patients sans insurance, and Palms West’s retention of them, ultimately causing Casasnovas’ death, would likely be proved using the prevailing standard of care of hospitals as in Perez. This implicates the pre-suit requirements of the Medical Malpractice Act.
[A] claim for medical malpractice [is] “a claim, arising out of the rendering of, or the failure to render, medical care or services.” The question in determining if a claim is a medical malpractice claim is whether the plaintiff must rely upon the medical negligence standard of care, as set forth in section 766.102(1), Florida Statutes (2007), in order to prove the case. Integrated Health Care Servs., Inc. v. Lang-Redway, 840 So.2d 974, 980 (Fla.2002).
*790 Jackson, 991 So.2d at 399 (granting certio-rari petition finding claim arose under Medical Malpractice Act).
We agree with the petitioner’s assertion that the medical negligence umbrella is wide and often encompasses business decisions which result in injury to the patient. In Paulk v. National Medical Enterprises, Inc., 679 So.2d 1289 (Fla. 4th DCA 1996), patients sued several hospitals for extending their stays, without medical necessity, in order to exhaust insurance payments. There, the doctors provided some treatment to the patients that was necessary; however, they provided more than was actually needed, in a purported scheme to defraud the insurer. This court found that the pre-suit requirements applied, reasoning that the “fraudulent rendering of unnecessary medical care and services is encompassed by the term ‘arising out of the rendering of ... medical care or services.’ ” Id. at 1290. Here the respondent’s claims are based in medical negligence because in order to prove that Palms West failed to timely obtain a gas-troenterology consultation, resulting in Ca-sasnovas’ death, the respondent would have to prove that a consultation was even medically necessary.
Paulk remarked:
Plaintiffs’ argument on appeal that the claims are not predicated on a breach of the professional standards of care appropriate for the patient’s condition is belied by the allegations of their own complaint. Among others, plaintiffs allege that decedent “was in need of psychiatric treatment”; that the providers in this case “failed to provide [decedent] with any meaningful treatment”; and that the treatment provided was “without proper regard for [decedent’s] medical needs.” In light of these allegations, the conclusion that the cause of action sounds in medical malpractice is inescapable.
Id. at 1290-91. Similarly here, the respondent argued in his complaint that Casasno-vas was in need of medical services and was injured because he did not receive them.
We therefore find that the trial court departed from the essential requirements of law when it failed to dismiss the respondent’s remaining claims. We quash the order denying petitioner’s motion to dismiss for failure to properly follow pre-suit procedures and remand for further proceedings consistent with this opinion.

Petition Granted; Remanded.

POLEN, TAYLOR and HAZOURI, JJ., concur.