SALTER, J.
Angel and Maria Acosta appeal a summary final judgment entered in favor of HealthSpring of Florida, Inc. (doing business as “Leon Medical Centers Health Plans, Inc.”), in a circuit court lawsuit relating to a stroke suffered by Mr. Acosta in May 2009. The issue presented is whether the Acostas’ claims against HealthSpring are subject to Florida’s medical malpractice statute and, if so, whether their claims were barred by the two-year statute of limitations and their failure to provide a timely statutory presuit notice to HealthSpring. We reverse, concluding that (1) the Acostas’ claims against HealthSpring were not “claims for medical malpractice” as defined in section 766.106(l)(a), Florida Statutes (2009), and (2) even if the claims are characterized as a matter of law as claims for medical malpractice, the claims related back to the first amended complaint (which had a filing date within the applicable statute of limitations), and HealthSpring waived the statutory presuit notice requirement in its response to that pleading.

Background and Procedural History

Mr. Acosta suffered his stroke in May 2009 and was initially seen at North Shore Medical Center. HealthSpring provided Medicare health insurance benefits to Mr. Acosta. The Acostas’ initial circuit court complaint in 2010 alleged that HealthSpr-ing breached its contract with Mr. Acosta (Count I) and negligently performed that contract (Count II). Count III was Ms. Acosta’s claim for loss of consortium. HealthSpring moved to dismiss the complaint for a failure to attach exhibits, and it removed the case to federal court. There the Acostas filed an amended complaint attaching the pertinent exhibits. HealthSpring filed an answer and affirmative defenses that did not include any specific allegation that the Acostas were required to provide, or had failed to provide, a statutory medical malpractice presuit notice. The federal court then remanded the case to the circuit court in 2011, finding that the Acostas’ state law claims “raise no substantial federal question.”
The Acostas then filed a second amended complaint in which they joined as additional defendants the North Shore Medical Center (where Mr. Acosta was first seen for the stroke) and Dr. Rehan Naqui, a physician who reviewed Mr. Acosta’s case while he was at North Shore. The new counts against North Shore and Dr. Naqui were medical malpractice claims. The Acostas served statutory presuit notices as to North Shore and Dr. Naqui, and they included an allegation to that effect in the second amended complaint. HealthSpr-ing’s answer and affirmative defenses to the second amended complaint alleged that the Acostas “failed to comply with Section 766 et seq., by failing to provide [HealthSpring] with a notice of intent to initiate medical malpractice within the two (2) year statute of limitations for HealthSpring’s alleged failure to render medical care and services to Angel Acosta.”
HealthSpring moved for a summary final judgment regarding the Acostas’ failure to serve a presuit notice and the expiration of the two-year limitations period for medical malpractice claims. The Acos-tas filed a response that included pleadings and deposition testimony. The trial court granted HealthSpring’s motion, and this appeal followed.

*248
Analysis

“We review the summary judgment de novo to determine whether, after viewing every inference in favor of [the non-mov-ant], there is any genuine issue of material fact. If not, we must determine whether [the movant] is entitled to judgment as a matter of law.” Bldg. Educ. Corp. v. Ocean Bank, 982 So.2d 37, 40 (Fla. 3d DCA 2008) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)).
Because the presuit requirements of Florida’s Medical Malpractice Act limit claimants’ constitutional rights of access to the courts, we narrowly construe the pre-suit notice requirements in favor of such access. Pierrot v. Osceola Mental Health, Inc., 106 So.3d 491, 493 (Fla. 5th DCA 2013).
I. “Medical Malpractice” versus “Ordinary Negligence"
The allegations relating to HealthSpring in the Acostas’ second amended complaint did not address traditional medical assessments, professional judgment, and medical services. The Acostas alleged that Healthspring’s administrative personnel— not medical staff — failed to provide contractual authorization for Mr. Acosta to be transported promptly to the University of Miami hospital for an urgent carotid en-darterectomy to prevent a second major stroke. Dr. Naqui and North Shore allegedly provided diagnosis and initial care— but Healthspring’s administrative delay in authorizing Mr. Acosta’s transfer allegedly resulted in his second stroke four days after the first. The Acostas alleged that one or more administrative employees at HealthSpring belatedly authorized transfer to Mercy Hospital instead of the University of Miami Hospital because HealthSpring enjoyed a lower “preferred provider” rate at Mercy Hospital for the services in question.
The central issue, therefore, was whether the Acostas’ claims against HealthSpr-ing required evidence that HealthSpring’s acts and omissions deviated from accepted standards of medical care. Mere delay, albeit ultimately-critical delay, in arranging transportation to a different hospital to save money, may have involved negligence by clerical personnel of HealthSpring, not medical personnel. In its motion for summary judgment, HealthSpring candidly acknowledged that the distinction between ordinary negligence and medical negligence “is fundamentally fact dependent.” HealthSpring did not provide summary judgment evidence sufficient to conclusively refute the Acostas’ claims that the negligence was contractual and “ordinary” in character rather than “medical negligence.”
In Quintanilla v. Coral Gables Hospital, Inc., 941 So.2d 468 (Fla. 3d DCA 2006), a nurse allegedly spilled hot tea on a patient hospitalized for respiratory difficulties. The hospital raised the patient’s failure to comply with the statutory presuit notice as an affirmative defense. We reversed a summary judgment based on that defense, holding:
This is simply a claim that arises out of the act of serving a cup of hot tea. This is not a claim that arises out of the nurse’s medical judgment in giving Quintanilla the hot tea. The process of serving tea did not involve medical skill or judgment. The injury is not a direct result of receiving medical care from the provider.
Id. at 470. In the case at hand, the undisputed delay in administration — whether caused by telephone tag in the calls from HealthSpring to the two hospitals to check on rates, mere processing delay because of the volume of similar authorizations need *249 ed for other claimants those days, or otherwise — creates a triable issue of fact. Administrative delays and refusals in the authorization of medical care have been characterized by the Fourth District as ordinary contract or negligence claims rather than claims for medical malpractice. Solomon v. Well Care HMO, Inc., 822 So.2d 543 (Fla. 4th DCA 2002); Lane v. Health Options, Inc., 796 So.2d 1234 (Fla. 4th DCA 2001).
In response, HealthSpring argues that the 2003 statutory amendment that included health maintenance organizations (HMOs) in the definition of “health care provider”[1] alters the reasoning and result in Solomon and Lane. We disagree. The fact that the organization is a “health care provider” does not talismanically transform every decision (or non-decision) made by a clerk or administrative staffer into a medical judgment.
II. Waiver of the Statutory Presuit Notice Requirement
If we characterized the Acostas’ claims against HealthSpring as “claims for medical malpractice” subject to the statutory presuit statute notice requirement— which we do not — we would then be required to address the Acostas’ second issue on appeal. The Acostas argue that any affirmative defense or denial of a condition precedent based on their failure to provide a statutory presuit notice to HealthSpring was waived because HealthSpring did not plead such an issue in its response to the first amended complaint. HealthSpring maintains that the second amended complaint is the controlling pleading, and HealthSpring did raise the presuit notice issue in its response to the Acostas’ second amended complaint. At that point, however, the applicable two-year statute of limitation had passed, such that a curative statutory presuit notice would have been ineffectual.
The Acostas’ argument is well taken, because the allegations against HealthSpr-ing in the second amended complaint were not materially different than the counterpart allegations in the first amended complaint. The new allegations in the second amended complaint pertained to the additional defendants, North Shore Medical Center and Dr. Naqui. The Acostas had provided a timely statutory presuit notice to each of those defendants.
This scenario falls squarely within the Supreme Court of Florida’s analysis in Ingersoll v. Hoffman, 589 So.2d 223 (Fla.1991), which held that the defendant’s failure to timely and specifically raise statutory presuit notice condition until after applicable statute of limitation had run constituted a waiver of the issue. To the extent that Healthspring’s motion and summary final judgment are grounded on the Acostas’ failure to provide a timely presuit notice to HealthSpring, we reverse the summary final judgment on that basis as well.

Conclusion

For these reasons, the summary final judgment for HealthSpring is reversed, and the case is remanded to the trial court for further proceedings.
Reversed and remanded.

. § 766.202(4), Fla. Stat. (2009).