**J.B. and J.W.B., individually and on behalf of their minor child, S.B. and E.B. and M.B. individually, Plaintiffs–Appellants,**

v.

**SACRED HEART HOSPITAL OF PENSACOLA, Defendant–Appellee.**

No. 92–2053.

United States Court of Appeals, Eleventh Circuit.

July 27, 1993.

Ballay & Braud, Cynthia Davidson, Charles J. Ballay, Adrian A. Colon, Jr., Belle Chasse, LA, for plaintiffs-appellants.

Emmanuel, Sheppard & Condon, A.G. Condon, Jr., Karen O. Emmanuel, Pensacola, FL, for defendant-appellee.

or financial damages on plaintiffs' claims. The district court's ruling on these points was thus procedurally proper.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and BRIGHT *, Senior Circuit Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

This case comes to the United States Court of Appeals for the Eleventh Circuit on an appeal from the United States District Court for the Northern District of Florida. This case involves questions of Florida law which are determinative of the cause, but unanswered by controlling precedent of the Supreme Court of Florida. We, therefore, certify these questions for resolution by the highest court of Florida.

The pertinent factual allegations, as set forth in the complaint, are as follows:

J.B., a plaintiff, and L.B. were brothers. On or about April 17, 1989, Sacred Heart Hospital ("the Hospital") was requested by its medical staff to arrange transportation for L.B., a diagnosed AIDS patient, to another treatment facility in Alabama. The Social Services Department for the Hospital was unable to arrange ambulance transport, so it took it upon itself to contact L.B.'s brother in Mississippi, namely, J.B., requesting that he come to the Hospital and provide the transportation. J.B. was "under the impression" that his brother's diagnosis was Lyme Disease, and had not been notified that there was a change in diagnosis.

According to the complaint, L.B. was released from the Hospital with excessive fever and a heparin lock in his arm to J.B., "a layman providing a service without the benefit of training in the field of medical treatment and transport." J.B. was neither able nor trained to transport an individual in need

* Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

of medical care or treatment during the transport to another health care facility. The complaint states that J.B. could not provide adequate care for the transferee in an emergency situation. During the trip, L.B. began to thrash about and accidentally dislodged the dressing to his heparin lock, causing J.B. to reach over while driving in an attempt to prevent the lock from coming out of L.B.'s arm. In so doing, J.B. came in contact with fluid around the lock site. J.B.'s hand had multiple nicks and cuts on it due to a recent fishing trip.

The complaint goes on to state the following additional allegations: The Hospital was negligent in using J.B. as a transporter, in that the Hospital recognized the technical care L.B. would need in the transportation from it to the receiving hospital. The Hospital recognized the foreseeability of the risk, because it gave J.B. technical instructions on the care of L.B. in the event the heparin lock came loose or started to bleed. The complaint further charges that the Hospital failed to disclose to J.B. that his brother had AIDS, when it had a duty to inform him after choosing to use him in place of an ambulance. According to the complaint, as a result of the above-described incident, J.B. has tested positive for HIV, the virus that causes AIDS, thus sustaining damages in excess of $5,000,000.00.

Plaintiffs filed their complaint on April 18, 1991. In June 1991, the Hospital filed a motion to dismiss the complaint, based upon several alternative grounds, one being that the plaintiffs failed to comply with the presuit screening requirements set forth in Chapter 766 of the Florida Statutes. The Hospital also moved to dismiss with prejudice on the basis that the complaint was not timely filed in accordance with the two-year statute of limitations for medical malpractice actions set forth in Fla.Stat. § 95.11(4)(b).

On December 17, 1991, the U.S. District Court for the Northern District of Florida issued an order granting the Hospital's motion to dismiss, holding that J.B.'s cause of action was controlled by the Florida medical malpractice statutes, Fla.Stat. ch. 766, and that the plaintiffs failed to comply with the pre-suit screening procedure set out therein.

The district court also agreed with the Hospital that the applicable statute of limitations was the two-year period set out in Fla.Stat. § 95.11(4)(b), pertaining to actions for medical malpractice.

The plaintiffs appealed the district court's decision, submitting that their cause of action is not controlled by Florida's medical malpractice statutes, but by the principles of ordinary negligence.

On appeal, the dispute centers on the applicability of Chapter 766 and § 95.11(4)(b) to J.B.'s cause of action. Plaintiffs argue that neither Chapter 766 nor the statute of limitations for medical malpractice claims is applicable to this proceeding, because J.B. was not a patient of the Hospital and did not receive any medical "diagnosis or treatment." The Hospital argues that the complaint alleges professional malpractice, not ordinary negligence, and that the claim is, in fact, one "arising out of the rendering of, or failure to render, medical care or services." Accordingly, the Hospital argues that the claim is covered by the provisions of Chapter 766, as well as the statute of limitations found at § 95.11(4)(b).

After careful review of Florida law, we conclude that these questions are unanswered by controlling precedent of the Supreme Court of Florida.

Fla.Stat. § 766.106(1)(a) defines a "[c]laim for medical malpractice" as "a claim arising out of the rendering of, or the failure to render, medical care or services." In addition, § 766.202 defines a "claimant" as "any person who has a cause of action arising from medical malpractice." Section 766.202(6) defines "medical negligence" as "medical malpractice, whether grounded in tort or in contract."

Section 95.11(4)(b) sets out a two-year statute of limitations for medical malpractice actions and defines the type of conduct which constitutes an "action for medical malpractice." That section provides as follows:

An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis,

treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care.

In *Silva v. Southwest Florida Blood Bank*, 601 So.2d 1184 (Fla.1992), the Florida Supreme Court interpreted § 95.11(4)(b). That case, however, did not address the question of "privity" as used in the statute. Nor are there other Florida cases which explain the requirement of "privity" as it might be applied to the facts in the instant case. *Cf. Baskerville–Donovan Engineers, Inc. v. Pensacola Exec. House Condo. Association*, 581 So.2d 1301, 1303 (Fla.1991) (holding that privity language in general professional malpractice statute of limitations, § 95.11(4)(a), required "direct contractual privity" between plaintiff and defendant professional).

The Hospital contends that the plaintiff J.B. was in privity with the defendant because he dealt with the Hospital face to face, agreed with the Hospital to transport his brother, and took instructions from the Hospital regarding the care for his brother during transport. The Hospital argues that it was because of this relationship between J.B. and the Hospital that plaintiffs allege a duty of care is owed by the Hospital to J.B., which in this case was allegedly breached. Plaintiffs, however, contend that J.B. was not a patient of the Hospital, nor did he receive any treatment or diagnosis. Accordingly, plaintiffs argue that there is no "privity" between the parties, as that term is used in § 95.11(4)(b).

It is further unresolved whether or not plaintiffs' allegations, as set forth in the complaint, constitute a claim for medical malpractice, as that term is used in Chapter 766 and in § 95.11(4)(b). Plaintiffs argue that since J.B. was not a patient of the Hospital and did not receive any medical diagnosis, treatment, or care from the Hospital, the provisions of Chapter 766 do not apply. The Hospital, on the other hand, argues that the cause of action alleged does in fact arise out of the rendering or failing to render medical care and services, both to the patient L.B. and the plaintiff J.B. Defendant Hospital contends that the allegations in the complaint that the Hospital breached its duty of care are grounded on the premise that the Hospital had special medical knowledge and expertise as a health care provider, which created the alleged duty. *See NME Properties, Inc. v. McCullough*, 590 So.2d 439, 441 (Fla.Dist. Ct.App.1991) (noting that simplest test for applicability of pre-suit requirements in Chapter 766 is whether the professional medical negligence standard of care at § 766.102 applies to alleged tortfeasor).

We believe that these issues of Florida law raised by the parties in this appeal are appropriate for resolution by the highest court of Florida. We, therefore, certify the following questions:

1. DOES A COMPLAINT WHICH ALLEGES INJURIES TO THE BROTHER OF A HOSPITAL PATIENT ALLEGEDLY ARISING OUT OF THE DEFENDANT HOSPITAL'S FAILURE TO WARN THE PLAINTIFF BROTHER OF THE PATIENT'S INFECTIOUS DISEASE, FAILURE TO PROPERLY INSTRUCT THE PLAINTIFF REGARDING TRANSPORTATION OF THE PATIENT, AND NEGLIGENTLY USING THE NON–PATIENT BROTHER AS A TRANSPORTER FOR THE PATIENT FALL WITHIN FLA. STAT. § 95.11(4)(b), THE TWO–YEAR STATUTE OF LIMITATIONS FOR MEDICAL MALPRACTICE ACTIONS?

2. DOES CHAPTER 766 OF THE FLORIDA STATUTES APPLY TO SUCH A CAUSE OF ACTION?

We do not intend the particular phrasing of these questions to limit consideration of the issues posed by the entire case. In order to assist the determination, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.

IT IS SO ORDERED.