635 So.2d 945 (1994)
J.B., et al., Appellants,
v.
SACRED HEART HOSPITAL OF PENSACOLA, Appellee.
No. 82147.
Supreme Court of Florida.
April 21, 1994.
*946 Charles J. Ballay and Adrian A. Colon, Jr., of Ballay & Braud, Belle Chasse, for appellants.
Karen O. Emmanuel of Emmanuel, Sheppard & Condon, Pensacola, for appellee.
SHAW, Justice.
We have for review two certified questions from federal circuit court[1] that are determinative of a cause pending before that court and for which there appears to be no controlling precedent:
1. Does a complaint which alleges injuries to the brother of a hospital patient allegedly arising out of the defendant hospital's failure to warn the plaintiff brother of the patient's infectious disease, failure to properly instruct the plaintiff regarding transportation of the patient, and negligently using the non-patient brother as a transporter for the patient fall within Fla. Stat. § 95.11(4)(b), the two-year statute of limitations for medical malpractice actions?
2. Does Chapter 766 of the Florida Statutes apply to such a cause of action?
J.B. v. Sacred Heart Hospital, 996 F.2d 276, 278 (11th Cir.1993). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. We answer both questions in the negative.

I. FACTS
J.B., his wife, and their three minor children, who are all Mississippi residents, filed suit in federal district court[2] against Sacred Heart Hospital of Pensacola (Hospital) based on the following facts as alleged in the complaint:
V. That on [or] about April 17, 1989, Sacred Heart hospital was requested by their medical staff to arrange transportation for L.B., a diagnosed AIDS patient, to another treatment facility in Alabama.
VI. That the social services for the hospital were unable to arrange ambulance transport and so took it upon themselves to contact L.B.'s brother in Mississippi, namely J.B., requesting that he come to the hospital and provide the transportation.
VII. J.B., having visited L.B. at the hospital when he was first admitted was under the impression that his brother's diagnosis was Lyme's Disease. He had not been notified that there was a change in diagnosis after his visit.
VIII. The patient, L.B., was released from the hospital with excessive fever and a heparin lock in his arm to the plaintiff, J.B., a layman providing a service without the benefit of training in the field of medical treatment and transport.
... .
X. The complainant could not provide adequate care for the transferee in an emergency situation, as he was the operator of the vehicle.
XI. That during the trip, L.B. began to thrash about and accidently dislodged the *947 dressing to his heparin lock causing J.B. to reach over while driving in an attempt to prevent the lock from coming out of L.B.'s arm. In doing so, J.B. came in contact with fluid around the lock site. J.B.'s hand had multiple nicks and cuts due to a recent fishing trip.
The complaint alleged that the Hospital was negligent in arranging for J.B. to transport L.B. in that it knew of L.B.'s condition, the level of care that would be required in transporting him, and the risk involved:
XII. The Hospital was negligent in using J.B. as transporter, in that the hospital recognized the technical care L.B. would need in the transportation from their Hospital to the receiving hospital.
XIII. The hospital recognized the foreseeability of the risk, in that they gave J.B. technical instructions on the care of L.B. in the event that the heparin lock came loose or started to bleed.
And finally, the complaint alleged damages to J.B., his wife, and three minor children. J.B. has contracted the AIDS virus, his wife has been exposed to it through him, and his children have suffered a loss of relationship with their father:
XIV. As a direct result of the foregoing incident, complainant tested HIV+, therefore sustaining serious, permanent damages, including but not limited to past, present and future loss of earnings and earnings potential, medical expenses, physical pain, loss of consortium, loss of love and affection, loss of the enjoyment of life and severe mental anguish and pain in the amount of [$5,000,000].
... .
XVI. Additionally, complainant, J.W.B., contends that as a result of the aforementioned incident, she has been exposed to HIV and has sustained serious damages of severe fear, mental anguish and suffering and loss of the marital relationship with her husband, J.B., and as such is entitled to recover for loss of consortium in the amount of [$1,000,000].
XVII. Additionally, complainants, S.B., E.B. and M.B., contend that as a result of the aforementioned incident, their relationship with their father, J.B., has been affected, and as such, they are entitled to recover for loss of consortium in the amount of [$300,000] each.
The federal district court ruled that J.B.'s complaint stated a claim for medical malpractice and was thus subject to the presuit notice and screening procedures set out in chapter 766, Florida Statutes (1989). Because J.B. did not follow those procedures, the court dismissed the complaint. On appeal, the federal circuit court declined to rule on J.B.'s claim, concluding that the issues are appropriate for resolution by the Florida Supreme Court.

II. CHAPTER 95
Chapter 95, Florida Statutes (1989), sets a two-year limitations period for medical malpractice actions:
95.11 Limitations other than for the recovery of real property.  Actions other than for the recovery of real property shall be commenced as follows:
... .
(4) WITHIN TWO YEARS:
... .
(b) An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence... .
§ 95.11, Fla. Stat. (1989). The statute goes on to define a medical malpractice action:
An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care.
§ 95.11(4)(b), Fla. Stat. (1989).
The key inquiry under the statute is whether the action "aris[es] out of any medical, dental, or surgical diagnosis, treatment, or care." If there is doubt as to the applicability of such a statute, the question is generally resolved in favor of the claimant. Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive House Condominium Ass'n, Inc., 581 So.2d 1301, 1303 (Fla. 1991) ("Where a *948 statute of limitations shortens the existing period of time the statute is generally construed strictly, and where there is reasonable doubt as to legislative intent, the preference is to allow the longer period of time.").
This Court recently addressed the issue of whether a suit constituted a medical malpractice action in Silva v. Southwest Florida Blood Bank, Inc., 601 So.2d 1184 (Fla. 1992). The trial court in Silva ruled that the two-year statute of limitations for medical malpractice actions barred the claimant's suit against a blood bank for releasing units of AIDS-contaminated blood to the treating hospital. The district court affirmed. In determining that the district court erred, we defined "diagnosis, treatment, or care" under section 95.11(4)(b), Florida Statutes (1991):
First, there is no ambiguity to clarify in the words "diagnosis," "treatment," or "care," and we find that these words should be accorded their plain and unambiguous meaning. In ordinary, common parlance, the average person would understand "diagnosis, treatment, or care" to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness. This parallels the dictionary definitions of those terms. According to Webster's Third International Dictionary (1981), "diagnosis" means "the art or act of identifying a disease from its signs and symptoms." "Treatment" means "the action or manner of treating a patient medically or surgically." "Care" means "provide for or attend to needs or perform necessary personal services (as for a patient or child)." Likewise, in medical terms, "diagnosis" means "[t]he determination of the nature of a disease." "Treatment" means "[m]edical or surgical management of a patient." And "care" means "the application of knowledge to the benefit of ... [an] individual."
Id. at 1187 (citations omitted).
We held that the blood bank rendered no diagnosis, treatment, or care to the injured parties:
Neither the blood bank nor any of its employees had any knowledge or information about the recipients' medical conditions. Southwest played no role in determining the nature of the plaintiff patients' illnesses, did not treat those patients, and did not attend to the personal needs of those patients.
Id. Accordingly, the suit was not a medical malpractice action for purposes of the statute and the two-year statute of limitations was inapplicable.
We find Silva dispositive of the present issue. According to the allegations in J.B.'s complaint, at the time the Hospital contacted him to drive his brother to Alabama, J.B. had no medical condition for which he sought medical services at the Hospital. His injury arose solely through the Hospital's use of him as a transporter. The simple question we must decide is whether this injury arose from the Hospital's medical diagnosis, treatment, or care of J.B.[3] Applying the law as set forth in Silva, we conclude that it did not. Accordingly, this suit is not a medical malpractice action for chapter 95 purposes and the two-year statute of limitations is inapplicable.

III. CHAPTER 766
Chapter 766, Florida Statutes (1989), which governs standards for recovery in medical malpractice and medical negligence actions, imposes certain notice and presuit screening requirements upon a claimant. These provisions must be met in order to maintain a medical malpractice or medical negligence action against a health care provider. See Weinstock v. Groth, 629 So.2d 835 (Fla. 1993).
In delineating the actions to which it applies, section 766.106, Florida Statutes (1989), defines a "[c]laim for medical malpractice":
"Claim for medical malpractice" means a claim arising out of the rendering of, or the failure to render, medical care or services.
*949 § 766.106(1)(a), Fla. Stat. (1989). And section 766.202, which applies to medical negligence claims, defines "medical negligence," in turn, as medical malpractice:
"Medical negligence" means medical malpractice, whether grounded in tort or in contract.
§ 766.202(6), Fla. Stat. (1989). Reading these two sections in conjunction, we conclude that chapter 766's notice and presuit screening requirements apply to claims that "aris[e] out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (1989).
According to the allegations in J.B.'s complaint, the Hospital was negligent in using J.B. as a transporter. The complaint does not allege that the Hospital was negligent in any way in the rendering of, or the failure to render, medical care or services to J.B. Accordingly, the complaint does not state a medical malpractice claim for chapter 766 purposes, and the notice and presuit screening requirements are inapplicable.

IV. CONCLUSION
Based on the foregoing, we answer both certified questions in the negative, and direct that our decision be forwarded forthwith to the United States Eleventh Circuit Court of Appeals. We return this case to that court for further proceedings.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The questions of Florida law were certified by the United States Court of Appeals, Eleventh Circuit.
[2] The suit was filed in the United States District Court, Northern District of Florida, Pensacola Division.
[3] The Hospital's claim that this action arose from the medical diagnosis, treatment, or care of L.B. is without merit. J.B., not L.B., is the party allegedly injured by the Hospital's negligence.