864 So.2d 1178 (2004)
Jeffrey W. WELKER, Appellant,
v.
SOUTHERN BAPTIST HOSPITAL OF FLORIDA, INC., a corporation, Appellee.
No. 1D02-4894.
District Court of Appeal of Florida, First District.
January 8, 2004.
Rehearing Denied February 6, 2004.
*1180 Lawrence C. Datz and Albert Datz of Datz & Datz, P.A., Jacksonville, for Appellant.
Harvey L. Jay, III, Jacksonville, for Appellee.
WEBSTER, J.
Appellant seeks review of a final order dismissing with prejudice his three-count amended complaint naming appellee as the defendant. He asserts that the first and third counts state causes of action, which should have been permitted to proceed. Because we conclude that (1) the third count of the amended complaint states a cause of action against appellee for negligent interference with appellant's parental rights; (2) such a claim is not one for medical malpractice, requiring compliance with the presuit screening requirements of section 766.106, Florida Statutes (1999); and (3) the impact rule does not preclude the recovery of damages for emotional distress incident to such a claim; we reverse the trial court's order to the extent it dismissed that count, and remand for further proceedings. We affirm the trial court's dismissal with prejudice of the other two counts. We also certify to the supreme court a question regarding the applicability of the impact rule to such claims, which we believe to be of great public importance.

I.
Appellant's amended complaint had three counts. To the extent pertinent, he alleged the following:
[Appellee] operated a business held out to the public under the name of "Psychological Associates" and represented to the public as a provider of mental health services....
... Valerie Brink ... was an agent or employee of the [appellee], held herself out to be a licensed mental health counselor, and worked at Psychological Associates. Further, ... Brink acted within the scope and course of her employment....

*1181 [Appellant] is an individual who was formerly married to Penelope Donham.... They had two minor children....
Pursuant to a final judgment dissolving the marriage between [appellant] and Donham, [appellant] had custody of their minor children. From the time that [appellant] and Donham dissolved their marriage until the events described below, [appellant] and the children maintained their primary physical residence in Arizona.
The children came to visit Donham in Jacksonville during the summer of 1999. While the children were visiting her, Donham engaged the services of Brink.
On or about July 20, 1999, Brink made a written statement in the form of a letter addressed "To Whom It May Concern" and gave the opinion that [appellant's] and Donham's minor children suffered from a mental disorder as a direct result of [appellant's] misconduct. [Appellant's] purported misconduct included, but was not limited to, child abuse committed by [appellant] against his children. A copy of the letter is attached.
....
... Donham used Brink's letter to obtain an injunction against domestic violence against [appellant], without advance notice to him. Because [appellant] did not have advance notice of the injunction, he did not have an opportunity to defend against the allegations. The injunction denied [appellant] legal custody of, visitation with, and access to his children and effectively denied him the parental rights designated in the final judgment of dissolution of marriage....
... [Appellant] sought restoration of his parental rights by consolidating the injunction case with an enforcement proceeding related to the final judgment of dissolution of marriage which awarded him child custody. Those proceedings were successful resulting in court-ordered return of the children and dissolution of the aforementioned injunction.
As indicated, a copy of Brink's letter was attached to the complaint as an exhibit. Among other things, it stated that appellant's children met "all ... criteria for Post Traumatic Stress Disorder," and that "[t]he traumas which the children have experienced [we]re all directly caused by [appellant]." It also asserted Brink's opinion that "contact with [appellant] [wa]s psychologically harmful, and pose[d] a serious threat of bodily harm."
Count I alleged that Brink violated a statutory duty imposed by section 39.201, Florida Statutes (1999), by failing to report known or suspected child abuse to the Department of Children and Family Services. According to the allegations, had Brink made the required report, the Department of Children and Family Services would have been obliged to conduct an investigation. Allegedly because no such investigation was conducted, appellant "lost his parental rights for approximately one (1) year." Appellant claimed that he had been "injured and damaged by interference with parental rights, incurring expenses for attorney's fees, court costs, and suit money, and by suffering mental anguish, humiliation, embarrassment, and the loss of companionship and society of his children." Count II sought damages for the same injuries, alleging that Brink's letter contained "false and defamatory statements" about him. Count III also sought damages for the same injuries, alleging that it was reasonably foreseeable that Donham would publish the contents of Brink's letter to others; that Brink had a duty to exercise reasonable care to investigate "whether the purported factual basis *1182 of her opinion was true ..."; that "Brink breached her duty of reasonable care by not investigating or validating her statements"; and that, as a result, appellant had sustained the damages alleged.
Appellee moved to dismiss each count of the amended complaint with prejudice. As to count I, it contended that, as a matter of law, section 39.201, Florida Statutes (1999), did not create a civil cause of action for damages. As to count II, it contended (among other things) that, on its face, the amended complaint demonstrated that any claim for libel or defamation was barred by the applicable two-year statute of limitations. Finally, as to count III, it contended (among other things) that any negligence claim was barred because it was a claim for medical malpractice, and appellant had failed to comply with the presuit screening requirements of section 766.106, Florida Statutes (1999); and because the impact rule precluded recovery, as appellant could not claim that he sustained any physical injury as the result of an impact. Following a hearing, the trial court entered its order dismissing with prejudice (but without discussion) all three counts of the amended complaint. This appeal follows.

II.
Concluding that the three counts of the amended complaint failed to state causes of action, the trial court dismissed them all, with prejudice. Because the sufficiency of allegations of a complaint to state a cause of action is a question of law, our standard of review is de novo. E.g., Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 734 (Fla.2002). Moreover, we "must assume that all material factual allegations are true and must draw all reasonable inferences in favor of the pleader." Clark v. Gumby's Pizza Sys., Inc., 674 So.2d 902, 904 (Fla. 1st DCA 1996). Appellant does not challenge the dismissal of his defamation claim (count II). Accordingly, we affirm the dismissal of that count without further discussion.
In count I of the amended complaint, appellant alleged that appellee was vicariously liable for Brink's breach of a statutory duty, created by section 39.201, Florida Statutes (1999), to report known or suspected child abuse to the Department of Children and Family Services. Appellee argued in its motion to dismiss that section 39.201 did not create a statutory cause of action for damages.
Section 39.201 does not expressly create a cause of action for violation of its terms. A cause of action may, in appropriate circumstances, be implied from the language of a statute. Because section 39.201 does not expressly create a cause of action for violation of its terms, we must determine whether the legislature intended to create one notwithstanding its failure expressly to do so. See Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla.1994) ("legislative intent ... should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one"). We find nothing in section 39.201 or related provisions that suggests such an intent. On the contrary, we note that section 39.205, which appears to address the subject of penalties for failure to report known or suspected child abuse makes such nonfeasance a first-degree misdemeanor. § 39.205(1), Fla. Stat. (1999). It says nothing about the availability of a cause of action for damages. Moreover, those courts which have been presented with the same question regarding predecessor versions of section 39.201 have all concluded that no cause of action was created. Freehauf v. Sch. Bd. of Seminole County, 623 So.2d 761 (Fla. 5th DCA 1993) (holding that section 415.504, Florida *1183 Statutes (1987), does not create an implied cause of action for failure to report known or suspected child abuse as required by the statute); J.B. v. Dep't of Health & Rehab. Servs., 591 So.2d 317 (Fla. 4th DCA 1991) (same); Fischer v. Metcalf, 543 So.2d 785 (Fla. 3d DCA 1989) (en banc) (holding that section 827.07, Florida Statutes (1979), does not create an implied cause of action for failure to report known or suspected child abuse as required by statute). Accordingly, we hold that section 39.201, Florida Statutes (1999), does not create an implied cause of action for damages, and affirm the trial court's dismissal with prejudice of count I of the amended complaint.

III.
Count III of the amended complaint sought damages based on a theory of negligent interference with parental rights. Appellee argues that the trial court correctly dismissed that count with prejudice because (1) it was a claim for medical malpractice, and appellant had failed to comply with the presuit screening requirements of section 766.106, Florida Statutes (1999); and (2) the impact rule precluded recovery, as appellant could not claim that he sustained any physical injury as the result of an impact. We disagree with both arguments.

A.
Appellee contends that, because it is a "health care provider" as defined in chapter 766, Florida Statutes (1999), appellant was required to comply with the presuit screening requirements of section 766.106 before filing the claim alleged in count III. Although failure to comply with the presuit screening requirements before filing an action is not necessarily fatal, it is if compliance does not occur within the two-year statutory limitations period, requiring dismissal with prejudice. Kukral v. Mekras, 679 So.2d 278 (Fla.1996). According to appellee, because it is undisputed that appellant did not comply with the presuit screening requirements, and it is clear from the face of the complaint that the applicable two-year medical malpractice statute of limitations had run, the trial court correctly dismissed count III with prejudice. The flaw in appellee's argument is that it overlooks the fact that the section 766.106 presuit screening requirements apply only to a "`[c]laim for medical malpractice,'" which is defined as "a claim arising out of the rendering of, or the failure to render, medical care or services." § 766.106(1)(a), Fla. Stat. (1999).
In the first place, a claim is one for medical negligence for purposes of section 766.106 only if it is one as to which, to recover, the plaintiff must establish that the defendant failed to meet the "medical negligence standard of care as set forth in section 766.102(1)." Integrated Health Care Servs., Inc. v. Lang-Redway, 840 So.2d 974, 980 (Fla.2002). Accord Broadway v. Bay Hosp., Inc., 638 So.2d 176 (Fla. 1st DCA 1994). According to section 766.102(1), a plaintiff must carry such a burden to recover only if "death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b)." § 766.102(1), Fla. Stat. (1999). Although section 768.50(2)(b) was repealed in 1986, our supreme court has held that we must look to the language of that statute at the time of its original enactment in 1977 to determine what "health care providers" are entitled to rely on the provisions of chapter 766, including section 766.106. Integrated Health Care Servs., 840 So.2d at 978-79. In Integrated Health Care Services, the court said that such "health care providers" included only:
hospitals, physicians, podiatrists, dentists, chiropractors, naturopaths, nurses, *1184 clinical laboratories, physicians' assistants, physical therapists and physical therapist assistants, health maintenance organizations, and associations for professional activity by health care providers, as well as certain ambulatory surgical centers, blood banks, plasma centers, industrial clinics, and renal dialysis facilities.
Id. at 979. Mental health counselors, such as Brink, are not included. Therefore, logic dictates that a claim for negligence based on actions or inactions by Brink is not a "`[c]laim for medical malpractice,'" as that term is used in section 766.106. Because such a claim is not one for medical malpractice, by the express language of section 766.106, it is not subject to that section's presuit screening requirements. See generally Weinstock v. Groth, 629 So.2d 835 (Fla.1993) (holding that, because psychologists were not included in the list of health care providers set forth in section 768.50(2)(b), the plaintiff did not have to comply with the presuit screening requirements of section 766.106 before filing an action against a psychologist).
In addition, the claim asserted in count III is not one for medical malpractice because it does not arise "out of the rendering of, or the failure to render, medical care or services" to appellant. In J.B. v. Sacred Heart Hospital of Pensacola, 635 So.2d 945 (Fla.1994), the plaintiff had filed an action against the defendant hospital in federal court, alleging that the hospital had been negligent in arranging for the plaintiff to transport his brother (who the hospital knew had AIDS) to another treatment facility without warning the plaintiff (who did not know his brother had AIDS) of the level of care that would be required during the trip and the risk involved to the plaintiff. Id. at 946-47. The complaint further alleged that, as a result of the hospital's negligence, the plaintiff had contracted the AIDS virus when he came into contact with fluid around the site of a heparin lock in his brother's arm. Id. The hospital argued that the complaint stated a claim for medical malpractice and that, because the plaintiff had failed to comply with the presuit screening requirements of chapter 766, it must be dismissed. Id. at 947. The federal district court agreed, and dismissed the complaint. Id.
On appeal, the federal court of appeals certified two questions to our supreme court. Id. at 946. The first asked whether the complaint was subject to the two-year medical malpractice statute of limitations, and the second asked whether chapter 766 applied to the claim. Id. In other words, the gist of both questions was whether the claim stated in the complaint was one for medical malpractice. The court answered both questions in the negative. Id. The hospital argued that, because the action "arose from the medical diagnosis, treatment, or care" of the plaintiff's brother, the claim was one alleging medical malpractice. Id. at 948 n. 3. The court disagreed. It held that (1) because the injuries alleged by the plaintiff did not arise "from the [h]ospital's medical diagnosis, treatment, or care of [the plaintiff]," the action was "not a medical malpractice action" and, therefore, the two-year medical malpractice statute of limitations was inapplicable (id. at 948); and (2) because "[t]he complaint d[id] not allege that the [h]ospital was negligent in any way in the rendering of, or the failure to render, medical care or services to [the plaintiff]," it "d[id] not state a medical malpractice claim for chapter 766 purposes, and the notice and presuit screening requirements [we]re inapplicable." Id. at 949. Applying the holdings in J.B. to this case, we conclude that, because count III does not allege that either Brink or appellee was negligent in "the rendering of, or the failure to render, medical care or services" to *1185 appellant, that count does not state a claim for medical malpractice, and the presuit screening requirements of section 766.106 do not apply.

B.
We can find no language in chapter 766 to suggest that appellee should be entitled to the benefit of the section 766.106 presuit screening requirements when it is alleged to be only vicariously liable for the negligence of an agent, and the negligence alleged does not constitute medical malpractice. On the contrary, section 766.106(2) would appear to require compliance with the presuit screening requirements only "prior to filing a claim for medical malpractice." Moreover, because the claim asserted by appellant in count III is not one for medical malpractice, logically the fact that appellee is alleged to be vicariously liable for Brink's negligence should have no impact on whether it is entitled to the benefit of the provisions of section 766.106. It would make little sense to require a plaintiff to comply with the presuit screening requirements as to a defendant alleged to be only vicariously liable in a situation where the active tortfeasor would not be entitled to the benefit of those provisions. Accordingly, we hold that appellant was not obliged to comply with the presuit screening requirements of section 766.106. Although arguably distinguishable on its facts, we note conflict with Goldman v. Halifax Medical Center, Inc., 662 So.2d 367 (Fla. 5th DCA 1995), which appears to reach the opposite conclusion, holding that hospitals are entitled to the benefit of section 766.106 whenever a claim is made that they are vicariously liable for negligent acts of their agents committed in the course of their employment, regardless of the nature of the negligence.

IV.
Appellee next argues that, even if the trial court was incorrect in concluding that count III must be dismissed for failure to comply with the presuit screening requirements of section 766.106, it correctly dismissed that count because it is barred by the impact rule. Again, we disagree.
Recently, our supreme court explained the impact rule as follows:
The rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries sustained in an impact."... The impact rule has been traditionally applied primarily as a limitation to assure a tangible validity of claims for emotional or psychological harm.... Florida jurisprudence has generally reasoned that such assurance is necessary because, unlike physical injury, emotional harm may not readily align with traditional tort law damage principles. Our courts have explained that the existence of emotional harm is difficult to prove, resultant damages are not easily quantified, and the precise cause of such injury can be elusive.... This Court has also theorized that without the impact rule, Florida courts may be inundated with litigation based solely on psychological injury.
Rowell v. Holt, 850 So.2d 474, 477-78 (Fla. 2003). The court has also recognized "that `the underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims.'" Gracey v. Eaker, 837 So.2d 348, 355 (Fla.2002) (quoting from R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995)).

A.
The impact rule precludes recovery of damages for emotional distress, *1186 mental anguish and the like absent physical injury resulting from an impact. It has no bearing on a plaintiff's right to recover for items of damages other than emotional distress when those damages are the proximate result of a defendant's negligence. In count III of his amended complaint, appellant sought to recover as damages the attorney's fees and court costs he was required to expend in litigation with his former wife to secure the return of his children, in addition to damages attributable to the emotional distress and mental anguish allegedly caused by the loss of custody and all other parental rights for a one-year period. The impact rule has no bearing on appellant's right to recover such items of damages, provided that appellant is able to prove his case. As we explained in Baxter's Asphalt & Concrete, Inc. v. Liberty County, 406 So.2d 461, 467 (Fla. 1st DCA 1981) (on petition for rehearing), quashed on other grounds, 421 So.2d 505 (Fla.1982):
Where the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interests, such costs and expenses, including reasonable attorney's fees upon appropriate proof, may be recovered as an element of damages.
Accord Winselmann v. Reynolds, 690 So.2d 1325, 1328 (Fla. 3d DCA 1997); De Pantosa Saenz v. Rigau & Rigau, P.A., 549 So.2d 682, 685 (Fla. 2d DCA 1989). Accordingly, even if the impact rule precludes appellant from seeking damages attributable to emotional distress or mental anguish, he is entitled to proceed with count III to the extent it seeks attorney's fees and court costs he was required to expend to secure the return of his children. Therefore, the trial court erred when it dismissed the count with prejudice.

B.
Our supreme court has acknowledged that "[t]he impact rule is not ... an inflexible, unyielding rule of law, so sacred that it must be blindly followed without regard to context." Rowell, 850 So.2d at 478. It has also expressed doubt "that the impact doctrine ever was intended to be applied to a tort ... where emotional damages are an additional `parasitic' consequence of conduct that itself is a freestanding tort apart from any emotional injury." Kush v. Lloyd, 616 So.2d 415, 422 (Fla.1992) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361-65 (5th ed.1984)). A convincing argument might be made that, if proved to be true, the conduct of Brink constituted "a freestanding tort," as to which damages for emotional distress or mental anguish are merely "an additional `parasitic' consequence." See generally Stone v. Wall, 734 So.2d 1038, 1044 (Fla.1999) (where, in the course of concluding that Florida should recognize a common law tort of intentional interference with a custodial parent-child relationship, the court noted that it "ha[d] consistently recognized that the parent-child relationship has fundamental constitutional significance" and that "[t]ort law has long protected `relational' interests, such as those between family members, from interference"); United States v. Dempsey, 635 So.2d 961, 964-65 (Fla.1994) (where the court stated that "it is the policy of this state that familial relationships be protected and that recovery be had for losses occasioned because of wrongful injuries that adversely affect those relationships").
Our supreme court has also recognized that, while narrowly drawn, "[e]xceptions to the rule have been ... created ... in a... class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy *1187 concerns, have surmounted the policy rationale undergirding application of the impact rule." Rowell, 850 So.2d at 478. Thus, in Kush v. Lloyd, 616 So.2d 415 (Fla.1992), the court held that the impact rule should not be applied to preclude damages for emotional distress in wrongful birth cases. Id. at 423. In doing so, it noted that the rule did not apply to torts for "which damages often are predominately emotional, such as defamation or invasion of privacy." Id. at 422. It then gave the following rationale for its conclusion: "There can be little doubt that emotional injury is more likely to occur when negligent medical advice leads parents to give birth to a severely impaired child than if someone wrongfully calls them liars, accuses them of unchastity, or subjects them to any other similar defamation." Id. at 422-23.
In Tanner v. Hartog, 696 So.2d 705 (Fla. 1997), relying on its decision in Kush, the court held that the impact rule should not be applied to preclude damages for emotional distress in an action brought by parents of a stillborn child alleging that the stillbirth was the result of the defendant's negligence. Id. at 708. In doing so, it acknowledged "that the law does not provide a remedy for every wrong," but concluded that "it is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced by parents as a result of the birth of a stillborn child caused by the negligence of another." Id.
Next, in Gracey v. Eaker, 837 So.2d 348 (Fla.2002), the court held that the impact rule should not be applied to preclude damages for emotional distress in a case where the plaintiffs claimed that their psychotherapist breached fiduciary and statutory duties of confidentiality to patients by divulging to each "`sensitive and personal information'" disclosed by the other to him. Id. at 357. It again based its holding on the analysis set out in Kush, saying:
The emotional distress that the [plaintiffs] allege they have suffered is at least equal to that typically suffered by the victim of a defamation or an invasion of privacy. Indeed, we can envision few occurrences more likely to result in emotional distress than having one's psychotherapist reveal without authorization or justification the most confidential details of one's life.
Id. at 356.
Most recently, in Rowell v. Holt, 850 So.2d 474 (Fla.2003), the court held that the impact rule should not be applied to preclude damages for emotional distress in an action where legal malpractice on the part of the defendant resulted in the plaintiff wrongfully having to spend a protracted period in pretrial confinement. Id. at 475-76. The court based its holding on the analyses in Kush and Tanner. Id. at 478-79.
There exist common threads in all of the foregoing cases in which the court established exceptions to the impact rule. In all, the likelihood of emotional injury was clearly foreseeable; the emotional injury was likely to be significant; the issue of causation was relatively straightforward; and it was unlikely that creating an exception to the rule would result in a flood of fictitious or speculative claims. We believe that count III of appellant's amended complaint likewise meets all of these criteria.
There can be little question about the proposition that one should be able to foresee that actions that result in depriving a parent of custody of his or her children and all other parental rights for a period of one year is likely to cause the parent mental anguish and emotional distress. Likewise, there can be little question *1188 about the proposition that the mental anguish and emotional distress are likely to be significant. To paraphrase Gracey, the emotional injury one is likely to suffer when he or she is deprived of custody of his or her children and all other parental rights for a substantial period must be "at least equal to that typically suffered by the victim of a defamation or an invasion of privacy." 837 So.2d at 356. Based on the allegations contained in count III, causation would appear to be relatively straightforward. Finally, it is no more likely that excepting claims such as appellant's from the impact rule will result in a flood of fictitious or speculative claims than it was that creating the exceptions in Kush, Tanner, Gracey or Rowell would lead to such a result. Accordingly, reasoning by analogy from the decisions in those cases, we hold that the impact rule does not bar appellant's request, made in count III of his amended complaint, for damages resulting from mental anguish and emotional distress. We also certify to the supreme court the following question, which we believe to be of great public importance:
DOES FLORIDA'S IMPACT RULE PRECLUDE THE RECOVERY OF DAMAGES FOR EMOTIONAL INJURIES IN A NEGLIGENCE CASE ALLEGING THAT THE DEFENDANT'S ACTIONS WRONGFULLY CAUSED THE PLAINTIFF TO LOSE CUSTODY OF HIS CHILDREN AND ALL OTHER PARENTAL RIGHTS FOR A SIGNIFICANT PERIOD?

V.
We affirm the trial court's dismissal with prejudice of counts I and II of appellant's amended complaint. We reverse the dismissal of count III, and remand for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED, with directions.
KAHN and VAN NORTWICK, JJ., concur.