FULMER, CAROLYN K, Senior Judge.
Stephen Rotell, Adam Rotell, and the Estate of Mathew Rotell appeal a final summary judgment entered in favor of Kathryn Kuehnle, Ph.D., with respect to their claims against her for wrongful death, negligence, and loss of consortium. Because we conclude that the circuit court erred in determining that the Rotells failed to allege a legal duty recognized under Florida law, we reverse and remand for further proceedings.
*785 Our review of the circuit court’s order granting summary judgment in favor of Dr. Kuehnle is de novo. See Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC, 983 So.2d 1175, 1180 (Fla. 2d DCA 2008) (“An appellate court’s review of summary judgment on a pure question of law is de novo.”); see also McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla.1992) (stating that the determination of the existence of a legal duty is a question of law).
I. UNDERLYING FACTS
Stephen Rotell and Kristina Gaime, the natural parents of Mathew and Adam Ro-tell, were divorced on May 24, 1994. On May 13, 1998, Ms. Gaime filed in the family law court an emergency motion for appointment of therapist, alleging that the parties could not agree on a therapist to treat their minor children and that an emergency situation existed as Mathew had “threatened to kill himself and [had] a plan for how he [was] going to do so.” Ms. Gaime requested the court to appoint Dr. Kathryn Kuehnle, a licensed psychologist, “as the treating therapist for the minor children.”
On May 18, 1998, the family law court rendered an order finding that an emergency situation existed and appointed Dr. Kuehnle to treat the children. The court directed that both parties “be kept advised of appointment dates, progress, diagnosis and treatment.”
Ms. Gaime also accused Stephen Rotell of sexually abusing the children, and the family law court later denied him access to the children while the Department of Children and Family Services investigated the alleged sexual abuse.[1] The Department ultimately determined the allegations of sexual abuse to be unfounded. But Stephen Rotell was never reunited with the children, and in a tragic turn of events on April 12, 1999, Ms. Gaime gave morphine tablets to Mathew and Adam and placed them in a van parked inside a garage with the engine running. Adam managed to escape and survive, but Mathew was unable to escape and died.
II. THE SUBJECT LAWSUIT
The Rotells sued Dr. Kuehnle for wrongful death, negligence, and loss of consortium.[2] In support of the wrongful death and negligence claims, the Rotells alleged in their fourth amended complaint that in February 1999, while Ms. Gaime had exclusive custody of the children, Dr. Kuehnle received reports from other counselors and experts indicating that Ms. Gaime
had previously abused Mathew and Adam, obsessed about her ability to maintain custody of the children and to deny Stephen custody [of] the children, and had posed a substantial risk to both children for a long time, and continued to pose a substantial risk to both children at the time Kuehnle was providing therapy and treatment.
The complaint further alleged:
As part of the duties owed Mathew and Adam while providing them psychologi *786 cal therapy and treatment, Kuehnle was required to exercise reasonable care in (a), reviewing all materials, including materials in the children’s case histories, provided by other counselors and experts; (b) considering the opinions of other counselors and experts pertaining to the children’s relationship with their mother, Gaime; (c) identifying signs and symptoms indicating the children were being abused by Gaime; (d) exercising reasonable care to assess the patients’ condition[s], diagnose the cause of the physical symptoms and behavior exhibited by the patients, and treat the patients; (e) adequately treating and diagnosing the source of the children’s psychological symptoms; and (f) notifying the children’s father and other proper authorities of reasonably suspected abuse.[3]
The Rotells claimed that Dr. Kuehnle breached her professional duty of care based upon the following acts and omissions
by failing to exercise reasonable care in: treating and diagnosing the children; complying with a court order to treat [Mathew and] Adam; reviewing information provided to her by other counselors and experts; considering the opinions of other counselors and experts concerning Gaime’s mental state and the threat she posed to her children; identifying reasonably ascertainable signs and symptoms that Gaime’s children were being subjected to abuse by their mother; discovering the threat Gaime posed to her children; determining the source of the abuse being suffered by the children; looking at, acting upon, and complying with ethical standards either codified or recognized in the practice of mental health treatment; and failing to report reasonably ascertainable evidence of abuse to either the children’s father or other proper authorities.
III. DR. KUEHNLE’S MOTION FOR SUMMARY JUDGMENT
Dr. Kuehnle filed a motion for summary judgment, asserting that “there is no duty, statutory or case law, that requires a psychologist to protect a client from the actions of a third party after having discovered the potential danger the third party poses.” Dr. Kuehnle also asserted that she did not have “a duty to identify third parties and warn the court or other authorities of potential harm to Mathew or Adam” and that she was entitled to summary judgment as a matter of law. Dr. Kuehnle submitted no expert affidavit or evidence challenging the factual allegations in the Rotells’ complaint.
The Rotells opposed the motion for summary judgment, arguing that Dr. Kuehnle owed a duty to treat Mathew and Adam under the level of care and treatment appropriate for a psychologist treating young children, that Dr. Kuehnle fell below the professional standard of care in treating the children, and that her negligence fore-seeably led to the children’s continued abuse and Mathew’s death. The Rotells also filed the affidavit of Dr. Roy Lubit, a *787 board certified psychiatrist, who addressed the standard of care owed by a psychologist treating abused children. Dr. Lubit opined that based upon the information available to Dr. Kuehnle, she should have recognized that the children’s symptoms
were most likely the result of ongoing emotional, physical and/or sexual abuse at the hands of their mother and the children’s step family[,] ... that the children’s symptoms could not be effectively treated so long as they remained in the sole unsupervised custody of their mother without access to their father, and ... that the children were in continuing danger of abuse and physical harm while in the unsupervised custody of their mother.
In Dr. Lubit’s opinion, “Dr. Kuehnle was required by standards governing professional psychologists, as well as by law, to notify appropriate authorities of the suspicion that the children were suffering abuse in their mother’s house.”
At the hearing on the motion, Dr. Kuehnle’s counsel characterized the duty at issue as follows:
In Florida, the courts have specifically indicated that we are not going to impose a duty on mental health care professionals to warn of some unforeseeable event, some unpredictable act by a mentally ill person, even when the mental health professional has access to that person’s medical records, is the one who is treating them, and is the one who is diagnosing them.
In this case, ... it would be a quantum leap to say that a psychotherapist or a psychologist, in Dr. Kuehnle’s position, can be held responsible to try to predict and warn of the behavior of someone they are not even providing treatment to. That would be — I apologize, it would be a ridiculous leap under the case law and the state of the law in Florida to hold Dr. Kuehnle to that standard, and[ ] frankly, to do so would be creating law that does not exist.
[[Image here]]
The duty in this case would be for Dr. Kuehnle to have to diagnose and predict dangerous behavior of the mother. Florida law does not recognize that cause of action.
Dr. Kuehnle relied on three cases to support her argument: Mental Health Care, Inc. v. Stuart, 909 So.2d 371, 371 (Fla.2d DCA 2005); Green v. Ross, 691 So.2d 542 (Fla. 2d DCA 1997); and Boynton v. Burglass, 590 So.2d 446 (Fla.3d DCA 1991).
In Boynton, the appellate court addressed whether a psychiatrist owed a duty to warn or protect the victim of or from potential harm posed by his patient. The court noted there was no duty under the common law to control the conduct of another or to warn others placed in danger by that conduct. 590 So.2d at 448. However, an exception to this general rule arises when a special relationship exists between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of that conduct. “Implicit in the creation of that exception, however, is the recognition that the person on whom the duty is to be imposed has the ability or the right to control the third party’s behavior.” Id. The Boynton court noted that in the case before it, there was no allegation that the psychiatrist’s relationship with his patient included the right and ability to control the patient’s behavior. Accordingly, a duty to protect the victim from the patient’s behavior did not arise from the psychiatrist’s relationship with his patient.
In Green, this court adopted the reasoning in Boynton to find that a mental health worker has no duty “to warn a potential victim when a patient presents a serious threat of violence to that potential victim.” *788 691 So.2d at 542. Similarly, in Stuart, 909 So.2d at 371, this court extended the reasoning in Boynton and Green to conclude that
a case manager at a community mental health facility who has provided noncustodial [sic] mental health care for a client has no duty to warn the nursing staff at a psychiatric hospital that the client may be dangerous when the client is admitted to the hospital as a result of a Baker Act proceeding initiated by a third party.
The circuit court agreed with Dr. Kuehnle’s argument and concluded that the cases upon which she relied compelled the following ruling:
I am going to find there is no duty based on the current status of the law....
[I]t seems to me that if clearly there is no duty on the part of a psychiatrist, a mental health worker, who is treating a patient[,] to warn a third party of the potential for that patient to harm a third party, it would be extraordinary for the Court to be able to conclude by analogy that somehow that there would be imposed a duty on a mental healthcare worker, psychologist, or psychiatrist to determine that a third party posed a threat to your patient; that the professional, whether it be a psychiatrist, psychologist, or mental health worker, somehow had a duty to prevent that third party from harming the patient ....
[[Image here]]
... I am granting the Motion For Summary Judgment simply on the finding by the Court that there was no legal duty on the part of Dr. Kuehnle, based on the allegations contained in the Fourth Amended Complaint, that she didn’t have a duty based on what I read the current status of Florida law to be to take action to warn that Ms. Gaime, had the capacity to kill one of the children, to do great bodily injury, or mental or psychiatric injury on the other. And I keep going back to that sentence [in Stuart], that Judge Altenbernd says that would have required her to somehow know what was in the mind of someone she wasn’t even treating to determine that she had this propensity or ability to do what ultimately was done.
[[Image here]]
... And frankly, I keep coming back to the case law and that [sic] the control issue.
IV. THE DUTY OWED BY DR. KUEHNLE
On appeal, Dr. Kuehnle asserts that the first question the court must answer as a matter of law is whether the defendant owed a duty and to whom that duty is owed. We agree. “The elements of a cause of action in tort are: (1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant’s breach, and (4) damages as a result of that injury.” O’Keefe v. Orea, 731 So.2d 680, 684 (Fla. 1st DCA 1998); see also Jenkins v. W.L. Roberts, Inc., 851 So.2d 781, 783 (Fla. 1st DCA 2003) (setting forth the elements of a cause of action for negligence in a wrongful death claim).[4] As noted by the Florida Supreme Court, forseeability “is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other *789 jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others.” McCain, 593 So.2d at 503. The supreme court distinguished between foreseeability as it relates to the determination of a duty and proximate causation as follows:
The duty element of negligence focuses on whether the defendant’s conduct foreseeably created a broader “zone of risk” that poses a general threat of harm to others. The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant’s conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold legal requirement for opening the courthouse doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.
Id. at 502-03 (citations and footnote omitted).
Regarding the duty issue, Dr. Kuehnle contends that the question for this court to answer is
whether the duty under Florida law requires a health care provider to control the actions of an individual with whom no doctor-patient relationship has been established, or whether Florida law recognizes a duty on the part of a psychotherapist to warn others of the potential future actions of an individual with whom no doctor-patient relationship has been established.
And Dr. Kuehnle argues that the circuit court properly ruled that the answer to this question is that there is no such duty.
The Rotells argue that Dr. Kuehnle has rebutted a duty the Rotells never asserted. We agree. The Rotells’ complaint does not assert a duty on the part of Dr. Kuehnle to predict, control, or prevent the actions of her patients’ mother. The Ro-tells’ complaint alleges that Dr. Kuehnle was a licensed psychologist, that she owed a duty to treat Mathew and Adam under the standard of care owed by a licensed psychologist to her patients, and that given the facts in this case, her duty included the duty to warn about reasonably suspected, ongoing abuse.
In the underlying proceeding, both Dr. Kuehnle and the circuit court properly acknowledged that Dr. Kuehnle owed a duty to treat Mathew and Adam under the standard of care owed by a licensed psychologist to her patient. When a “negligent party is a professional, the law imposes a duty to perform the requested services in accordance with the standard of care used by similar professionals in the community under similar circumstances.” Moransais v. Heathman, 744 So.2d 973, 975-76 (Fla.1999).[5] The circuit court also correctly recognized that in assessing whether the duty to provide reasonable psychological care gives rise to a duty to warn under the circumstances of this case, it must determine the foreseeable zone of risk. And it acknowledged that Dr. *790 Kuehnle need not have been able to foresee the precise injury and manner of injury suffered by the children. However, the circuit court incorrectly relied on the reasoning in cases that do not apply here to arrive at the conclusion that Dr. Kuehnle had to have the ability to predict and control Ms. Gaime’s behavior before any duty to warn would arise.
The facts in Boynton, Green, and Stuart are distinguishable from those in this case, and the reasoning in those decisions is not applicable to the determination of the existence of a duty to warn in this case. Most notably, in this case the parties asserting the duty are Dr. Kuehnle’s patients, not unknown, third-party victims. Thus Dr. Kuehnle’s duty arises directly from her status as the children’s treating psychologist. Moreover, the zone of risk and foreseeable harm does not depend upon Dr. Kuehnle’s ability to discover the exact nature of Ms. Gaime’s propensities or to control Ms. Gaime’s potential actions. Rather, it depends upon knowledge she gained or should have gained in treating her patients.
It is undisputed that Dr. Kuehnle owed a duty to Mathew and Adam as their treating psychologist. As such, she was in the unique position to receive information about her patients’ mental health from them and a variety of other sources. According to Dr. Lubit, under the professional standard of care, Dr. Kuehnle knew or should have known, as a result of information in her possession, that her patients were subject to ongoing abuse by their mother or step family. In addition, Dr. Lubit averred that the professional standard of care required Dr. Kuehnle to warn Stephen Rotell and appropriate authorities of ongoing abuse. Whether Dr. Kuehnle’s failure to warn foreseeably and substantially caused the death of Mathew and the injury to Adam is an issue of proximate cause for the jury.
V. CONCLUSION
We conclude that based upon the undisputed allegations in the fourth amended complaint, the Rotells met the minimal legal threshold of alleging a duty of care based upon Dr. Kuehnle’s status as Mathew and Adam’s treating psychologist which required that she treat them under the prevailing professional standard of care. In addition, Dr. Lubit’s affidavit created an issue of fact with respect to whether Dr. Kuehnle knew or should have known that the children were subject to ongoing abuse by their mother such that the professional standard of care required Dr. Kuehnle to warn Stephen Rotell or appropriate authorities of such abuse. Thus the circuit court erred in granting summary judgment in favor of Dr. Kuehnle at this stage of the proceedings.
Based upon the foregoing discussion, we reverse the summary judgment in favor of Dr. Kuehnle and remand for further proceedings. In so doing, we express no opinion with respect to whether Dr. Kuehnle breached the duty of care or whether any such breach proximately caused the Ro-tells’ injuries.
Reversed and remanded.
DAVIS, J., Concurs.
ALTENBERND, J., Concurs with opinion.

. The record reflects Ms. Gaime accused Stephen Rotell of sexually abusing the children on several other occasions.

. The Rotells also sued a number of other parties. They settled their claims against Li-fepath, Inc., Ms. Gaime's employer. The Department of Children and Family Services obtained a summary judgment with respect to the claims against it, and the Rotells did not challenge that summary judgment on appeal. The claims against Ms. Gaime apparently remain pending, but Ms. Gaime is presently serving a twenty-year sentence for second-degree murder concurrent with a fifteen-year sentence for attempted second-degree murder in connection with the underlying incident.

. The Rotells also alleged that Dr. Kuehnle had a statutory obligation to report known or reasonably suspected child abuse under section 39.201, Florida Statutes (1998). We agree with the circuit court's conclusion that the Rotells could not use section 39.201 to establish that duty because the statute, which requires mental health professionals and others to report known or suspected child abuse, does not give rise to a civil cause of action. See Welker v. S. Baptist Hosp. of Fla., Inc., 864 So.2d 1178, 1182-83 (Fla. 1st DCA 2004), quashed on other grounds by 908 So.2d 317 (Fla.2005). We do not reach the Rotells' argument that they would be entitled to use the statute to establish evidence of Dr. Kuehnle's negligence at trial because the circuit court did not decide that issue.

. Stephen Rotell's claim for loss of consortium derives from Adam Rotell's negligence claim and only survives if Adam Rotell proves his claim. See Gates v. Foley, 247 So.2d 40, 45 (Fla. 1971) (recognizing a claim for loss of consortium as being derivative to a claim for negligence).

. "A profession, within the meaning of section 95.11, is ‘any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida.’ " Moransais, 744 So.2d at 976 (citing § 95.11(4)(a), Fla. Stat. (1997)). With certain limited exceptions, an individual desiring to become a licensed psychologist in Florida is required to submit satisfactory proof of receipt of a doctoral-level psychological education. § 490.005(l)(b), Fla. Stat. (1998).